CLAUDE O. REED, RESPONDENT, v. THE TRAVELERS INSURANCE CO., APPELLANT.—60 S. W. (2d) 59.

Kansas City Court of Appeals, April 3, 1933.

1156

*Henry F. Poague* and *Haysler A. Poague* for respondent.

*Mosman, Rogers & Buzard* for appellant.

TRIMBLE, J.—Plaintiff brought suit upon an accident policy commonly known as a "ticket" policy of insurance usually sold at railway stations and ticket offices. The policy was bought about noon, October 20, 1930, good for four days, for a consideration of one dollar, the rate of premium being twenty-five cents per day.

On going into the railroad station at Clinton, Missouri, plaintiff asked the railroad agent therein to sell him an accident policy. The agent asked him his name, residence and for how many days he desired the policy. Plaintiff gave his name and residence, and said he wanted a policy for four days; and upon payment of the one dollar, was handed the ticket policy upon which this suit was brought. No other conversation was had between them.

Two days later, about 8:30 P. M., plaintiff was riding in an automobile driven by John Houk, east along Ohio Street in Clinton, Missouri, and was about to cross the Missouri, Kansas & Texas Railroad crossing thereon which ran diagonally across the street from northeast to southwest.

As they approached the crossing, the occupants of the car did not observe that a train was passing over said track and did not discover it until practically at the crossing. Plaintiff was unable to say whether the crossing was occupied by the engine or by some of the cars following it. The driver of the automobile, in the endeavor to avoid striking the train, swerved his car to the northeast along the side of the track and did not come in contact with the train; but just as the car was thus suddenly swerved, plaintiff opening the automobile door, was on the running-board intending to jump; but the sudden swerving of the automobile threw him off to the ground close to the passing train where his left arm fell across the rail and was run

over by the wheels, necessitating the amputation of his left hand about three inches above the wrist.

The policy provided for an indemnity in the sum of $2500 if insured should, during the time of the insurance, suffer bodily injuries solely by external, violent and accidental means; *"subject to the conditions and limitations herein contained,"* resulting, independently of all other causes, in the loss of a hand or foot by complete severance, through or above the wrist or ankle joint, within ninety days from date of accident.

On the back of the policy was a paragraph headed *Additional Provisions,* which, so far as applicable here, read as follows:

*"Additional Provisions.* 21. The insurance hereunder shall be void as to persons employed in mines, or in subaqueous work, or on iron or steel construction work, or on railroads, steamboats or other passenger or freight conveyances while on duty, or on vessels of any kind while on duty, *and persons maimed, crippled or deformed, or bereft of reason, sight or hearing,* and the company will return on demand to any such person, his or her executors, administrators or assigns the premium paid therefor." (Italics ours.)

Plaintiff gave notice of his accident and injury, and then it was discovered that prior to the issuance of the policy, sometime in the year 1918, plaintiff had received an injury on account of which his right leg was amputated midway between the ankle and the knee; so that, at the time of purchasing the ticket policy sued on and the time he lost his left hand, he was *maimed, crippled, and was wearing an artificial lower right leg and foot;* hence the company refused to pay, basing its refusal upon the above quoted provision No. 21. (The fact that plaintiff had an artificial leg and foot, at the time he purchased the policy, was not open to, or discernible by, ordinary observation.)

Upon discovery of the fact that plaintiff, at the time he bought the policy, was thus maimed and crippled and wore an artificial leg and foot, the Company, both before suit was brought and at the time of filing answer, tendered to plaintiff, and paid into court for plaintiff's benefit, the premium paid on said policy. (This plaintiff admitted in open court.)

The petition alleged that plaintiff made application to defendant for insurance; that, for a consideration paid by plaintiff, a contract or policy of insurance was issued to him as heretofore stated, wherein the company agreed to pay him $2500 in the event he suffered an accidental injury, within the life of the policy, which, independently of all other causes, would, within ninety days of the accident, result in the loss of one hand by complete severance, through or above the wrist; that plaintiff suffered the accident, and complied with all the conditions and provisions of the policy, demanded payment of

1158

said $2500, but that defendant denied all liability and vexatiously refused to pay. Wherefore judgment was asked for the amount due, with the statutory ten per cent penalty and an attorney's fee of $200 for such vexatious refusal.

The answer admitted the procurement and issuance of the policy, but set up said provision to the effect that the policy should be void if obtained or held by persons crippled, maimed or deformed, and asserted the defense that plaintiff was maimed, crippled and deformed, in that one of his legs had been amputated and he was compelled to wear an artificial leg, so that the policy was at all times void and of no effect; that tender of the premium was made and same was paid into court for plaintiff's benefit; that the agent did not know insured, and did not know he was maimed, crippled or deformed, and had he known that fact, he would not have issued the policy.

The reply was a general denial.

Under the instructions offered by the plaintiff and given by the court, the jury returned a verdict for plaintiff in the full amount of the policy with interest thereon at six per cent from November 3, 1930, but assessed no penalty. Defendant appealed.

In the course of his testimony, in which all of the above facts appeared and are conceded, plaintiff testified:

That he was not acquainted with the station agent, and when he went into the depot to see him, the latter was behind the counter of the ticket window in the depot waiting-room; that there was a wooden ledge or counter outside the railroad ticket window, the counter being about three and one-half feet high and the ticket window about three feet wide. "I was on the outside and the agent was on the inside of the counter. I do not remember that there was a sort of iron grill constructed in this window and that they shoved the ticket out underneath." . . . "When the agent stands at the window it comes up a little above the thigh." . . . "I did not sign any paper or make any application."

At the close of the evidence in plaintiff's behalf, the defendant offered a demurrer; but this was overruled and, defendant introducing no evidence, the cause was submitted to the jury which returned the verdict hereinbefore stated.

The sole determinative question herein, it seems to me, is whether or not this case comes within the purview of our statute (Sec. 5732, R. S. Mo. 1929, 6 Mo. Stat. Ann., p. 4373) relative to misrepresentations made in obtaining or securing a policy of insurance. If that section is applicable, the case ought to be affirmed; if not, it should be reversed. As viewed by the author hereof, the case does not come within the purview of that section.

It is no doubt true that the said section was enacted to prevent insurance companies from preparing a policy or contract of insurance

offering attractive features of indemnity, but, by questions to which answers were required having little or nothing to do with the liability involved, arranging it so that upon the slightest incorrectness or deviation from the true facts by the insured in his answers thereto, a situation was created whereby indemnity could be successfully withheld regardless of whether the error or misrepresentation had anything to do with the event which matured the policy. That being the evil aimed at, of course, the courts have very properly set their faces like flint against any scheme or device to avoid coming within its purview, or to escape the effect of its provisions. For instance, although the statute says, *"No misrepresentation made in obtaining or securing a policy of insurance on the life or lives* of any person or persons, citizens of this State, shall be deemed material, or render the policy void, unless,"* the matters misrepresented shall have actually contributed to the contingency insured against, and whether it has or has not shall be a jury question, yet it is held that the section applies to that part of a life policy having to do only with accident indemnity features. Williams v. Mutual Life of Illinois, 283 S. W. 64; Makos v. Bankers Acct. Ins. Co., 234 S. W. 369, which was a "life and health" insurance policy. The case of Burgess v. Pan-American Life Ins. Co., 230 S. W. 315, is apparently *cited* by plaintiff in support of the idea that even though there be no application to contain a misrepresentation yet as the policy itself contains a provision that "no liability would attach until it was duly delivered during the lifetime and good health of insured," nevertheless the section of the statute applied. We need not say whether this be true or not. For, in that case, like in the ones above cited and others, there was an *application* in which insured stated "that he had not had spitting of blood, habitual cough, expectoration, or shortness of breath, and that he was then fifty-eight years old and in good health." (Page 217.) The misrepresentations charged were that insured was more than fifty-eight and not in good health.

It may perhaps be true, that if, in this case, there can be seen any attempt to get around the statute by means of any subterfuge or canny device, then such scheme to fraudulently defeat the statute and such insurance ought itself to be defeated if legally possible.

But there is nothing of the kind in this case as I view it, and a statute meant to circumvent a practice of avoiding a liability by the means described therein ought not to be so stretched out of its meaning and purpose as to *destroy all right* of an insurance company to say that it will not insure a designated class of persons especially when the affliction or condition is a *bona fide* matter which actually renders the insurance of such persons *more hazardous* and *less desirable*.

There is no situation in this case of the insured having made out

a *prima facie* case and the burden being on defendant to establish a defense, a case is made which only the jury can settle. And yet that is precisely the theory or way in which the case was submitted. Plaintiff's instructions all assumed that a representation had been made, and left it to the jury to say whether such representation was in reference to a matter which in any way contributed to the accident. But, as I view it, the case is not of that kind. The only question to be determined is whether under the *conceded facts* the plaintiff was of a class, or whether his status was such, as made the policy void as to him. The clause making the policy void as to persons maimed, crippled or deformed states *an excepted risk.* In other words, the insurance coverage never extended to a person of the class or status mentioned. The company had a right to say it would not insure crippled persons against accidents. Such exclusion is reasonable and valid. Under the exclusion clause in this policy, and the circumstances and manner of its issue, the defendant's liability does not depend upon whether the maimed, crippled or deformed condition contributed to bring about the injury. The policy, instead of saying it shall become void if the injury is the result of insured's maimed, crippled or deformed condition, absolutely refused to insure any person who is crippled, maimed or deformed. The policy is the contract, and, although an insurance contract, it is to receive a reasonable interpretation consonant with the apparent object and plain intent of the parties. [14 R. C. L., sec. 103, p. 932.] The case is indeed very similar, in principle and in many of its aspects, to the case of Wendorff v. Missouri State Life Ins. Co., 1 S. W. (2d) 99, 102,

Although the Federal Courts are not deciding cases in the light of our Misrepresentation Statute, yet, as in my view that statute is inapplicable here, the following quotation is pertinent, found in Hawkeye Commercial Men's Assn. v. Christy, 294 Fed. 208, 211, quoting from Imperial Fire Ins. Co. v. Coos County, 151 U. S. 452, 463, as follows:

''(a) 'That contracts of insurance, like other contracts, are to be construed according to the sense and meaning of the terms which the parties have used, and, if they are clear and unambiguous, their terms are to be taken and understood in their plain, ordinary, and popular sense.' [151 U. S. 463, 14 Sup. Ct. 381, 38 L. Ed. 231.]

''(b) 'For a comparatively small consideration the insurer undertakes to guarantee the insured against loss or damage, upon the terms and conditions agreed upon, and, upon no other, and when called upon to pay, in case of loss, the insurer, therefore, may justly insist upon the fulfillment of these terms. If the insured cannot bring himself within the conditions of the policy, he is not entitled to recover for the loss. . . . It is immaterial to consider the reasons for the conditions or provisions on which the contract is made to

terminate, or any other provision of the policy which has been accepted and agreed upon. It is enough that the parties have made certain terms conditions on which their contracts shall continue or terminate. The courts may not make a contract for the parties. Their function and duty consist simply in enforcing and carrying out the one actually made.' [151 U. S. 462, 14 Sup. Ct. 381, 38 L. Ed. 231.]''

In Scales v. National Life & Accident Ins. Co., 186 S. W. 948, 950, it is said:

''Provisions in accident insurance policies, excepting certain classes and kinds of injuries and causes of death, are recognized as valid and binding contracts and provisions by the courts of Missouri and elsewhere.'' (Citing cases.)

This case was, it is true, certified to the Supreme Court where the same result was reached without passing ''on the question so thoroughly and ably discussed by the Court of Appeals.'' But the same principles announced in the quotation are declared by the court in other cases.

In Wilson v. Travelers Ins. Co., 190 Pac. 366, insured bought two ticket policies, each one on successive days whereby there was an overlapping of time covered by the two, but there was a provision in each policy that liability is limited to the amount specified in only one. (The policy in the case at bar has a similar provision.) It was held that recovery could be had only on one of them, and in the course of the opinion the court, at page 368, said: ''The policies make provision for such a contingency by providing for a refund of the premium,'' i. e., the premium paid on the policy not recovered on. The provision of *exempted risk* in the policy, in the case at bar, is like unto the exception of the risk in Meredith v. Business Men's Accidental Assn. of America, 213 Mo. App. 688, 692, and the court in its opinion said:

''The contract of insurance in the case at bar clearly contemplates the classification of occupations as to the hazard of the risks, and the right exists in the insurer to protect itself from extraordinary hazards. The premium rate is thereby fixed. The company therefore has the right to limit the insured in his indulgences in hazards not within the terms of the policy. The plain intent and object of the insurer in section 12, article 13, was to place without the operation of the policy extrahazardous undertakings, such as participating in aeronautics and riding motor cycles. These being extrahazardous undertakings, naturally would increase the probability of injury to persons engaging in them.''

See also in this connection Carr v. Pacific Mut. Life Ins. Co., 100 Mo. App. 602, 609; Banta v. The Continental Casualty Co., 134 Mo. App. 222; Benham v. Kentucky Central Life & Accident Ins. Co., 38 S. W. (2d) 954, in which the provision in the policy was somewhat

like the provision of the policy in the case at bar, and the plaintiff was contending that the evidence bearing on the evidence of false representation as to age was not admissible, but it was said by the court:

"Counsel for appellant devotes much time to a discussion of whether certain evidence bearing on the question of false representation as to age was properly admitted, as the application was not attached to the policy. In view of the conclusion of the court, it will not be necessary to discuss the admissibility of this evidence. The policy plainly provides if the insured is under the minimum of eighteen years or over the maximum of fifty-four years at his next birthday, it is null and void. There can be no doubt that the insurer may confine the risks which it will accept to certain ages, and provide in substance that the policy shall not cover risks not falling within the prescribed age limits. No question of estoppel or waiver being presented, the right of the beneficiary to recover depends on whether the insured was over fifty-four years of age at his next birthday."

See also further, on the branch of the case here considered, Blunt v. Fidelity & Casualty Co., 67 L. R. A. 793, 78 Pac. 729; Standard Life & Acct. Ins. Co. v. Jones, 10 So. 530, 533; Mossop-Continental Casualty Co., 137 Mo. App. 399, 118 S. W. 680; Campbell v. Fidelity & Casualty Co., 60 S. W. 492; Order of United Commercial Travelers v. Greer, 43 Fed. (2d) 499, 501-2; Flannagan v. Provident Life & Acct. Ins. Co., 22 Fed. (2d) 136, 139, 52 Fed. (2d) 888, 892; Reid v. American National Assurance Co., 204 Mo. App. 643, 646; Miller v. Illinois Life Assn., 212 S. W. 310; 3 Cooley's Briefs on Insurance, p. 2206; Hannah v. Aetna Life Ins. Co., 217 Mo. App. 261.

It seems to the author hereof that the Misrepresentation Statute applies only where there has been some misrepresentation made by the insured in obtaining the policy, or induced by the insurer before it will be issued. In the case at bar, there were no representations made by either party. The plaintiff asked for and obtained a ready-made contract. No negotiations were entered into about it, so the inference is that plaintiff knew what he was buying or could have known had he even casually looked it over.

There was no representation or "misrepresentation made in obtaining or securing of a policy" within the meaning of those words as used in the statute. Policies such as the one here involved, i. e., "ticket" policies, are uniformly executed without any application in the usual or statutory sense, with no opportunity for an application and without examination or investigation of the insured. Lack of time prevents this, and the short period during which such policies run, together with the expense of investigating the answers in an application, if one were required, as compared to the total amount of premium paid, make it practically impossible to make use of "applications" as in other policies; so that if such accident companies

are not allowed to restrict such ticket contracts in the way here done, they are powerless to protect themselves. Under the circumstances under which the ''ticket'' accident policy is sold, there is no hardship on plaintiff if, when the truth as to his crippled condition is discovered, his money is returned to him. For, unlike a life policy, his opportunity for insurance is not lost through increased age or the passing of the years, next, the purchase of the ticket policy did not cause or contribute to the accident and the insurance could not have been obtained in so short a time in such case, and as was done in this case, except by getting a ticket policy. Again, insured, owing to his being a cripple, was *not insurable,* and the experience had in this policy has not placed him *in any worse shape than before,* for the premium is tendered and deposited in court for him.

It cannot be that in Missouri *every* policy of insurance, no matter what its nature or the circumstances under which it is obtained and issued, is applicable to, or comes within the provisions of, Section 5732. In Carter v. Metropolitan Life Ins. Co., 204 S. W. 399, 400, it is said:

''Primarily, the determination of the issue involved is dependent upon the construction of Section 6937, Revised Statutes 1909 (Sec. 5732, R. S. Mo. 1929), which provides: (Here follows the statute.)

''Plaintiff contends, and the trial court so held, that this section applies not only to policies procured through misrepresentations made by the applicant for insurance, but as well to those procured by one simulating the applicant. This is a rather startling proposition, and, if the statute be so construed, its effect will be to render an insurance contract immune from a plea of invalidity for fraud, although obtained through false pretenses made by another than the insured, and without his knowledge. No amplification of words is necessary to the conclusion that such a construction, instead of lessening the possibility of fraud, as was evidently intended by the enactment of the section, will tend rather to promote the same. Aside, however, from this general conclusion, amply sustained by the rules of interpretation, a consideration of the nature of life insurance contracts and the conditions under which they are uniformly executed will aid in determining the meaning, purpose, and consequent limitation of the section.

''An examination of the applicant is a condition precedent to the issuance of a life insurance policy. From its terms, it is evidence that this section was intended to be limited to the facts elicited in this examination in its providing that the misrepresentations referred to shall be those 'made in obtaining or securing' the policy. The limitation is express, and under the rule embodied in the maxim of *expressio unius,* etc., other misrepresentations, outside of or independent of such examination, and which may affect the validity of the policy, are excluded. . . .

1164

"What is meant by the section, in other words, is that no false statement made in the application for the policy shall avoid the same, unless such statement concealed a condition which contributed to the death of the insured.

"Otherwise construed, the validity of the policy in other respects is left out of consideration. No limit, except as indicated in defining their materiality, is to be placed upon any representations made in securing the policy; and, although they may involve the grossest and most despicable fraud, viz., the impersonation of another for the purpose of profiting by his death, and be independent and outside of the purported examination of the insured, the insurer is to be precluded from interposing them in defense to an action on the policy, unless it be alleged that they contributed to the death of the insured. Such a construction is not in accord with a reasonable interpretation of the words employed. Its effect in the administration of the law of insurance under our statute would be to foster fraud. It outrages a righteous sense of justice, and is therefore foreign to the intention of the Legislature in the enactment of the section. Given the restricted construction we have indicated, however, it serves a useful and practical purpose in placing a reasonable limit upon the effect of misrepresentations the interposition of which has been deferred until the insured is dead."

The point in here citing the Carter case is that Section 5732 was held inapplicable to that case, and, so I think that, likewise, it is inapplicable in this. Especially is this manifest when we consider the *purpose* of the statute and the evil it was intended to remedy. That is well stated in Judge VALLIANT's opinion in Aloe v. Fidelity Mutual Life Association, 164 Mo. 675, l. c. 698, to-wit:

"The object of the statute is plain and the evil it was intended to correct is also apparent. The General Assembly of this State has never enacted a law for the purpose of enabling a man to perpetrate a fraud and reap the benefit of it, nor was this act passed for such a purpose. But in its enactment the General Assembly was endeavoring to prevent life insurance companies from taking advantage of men by inducing them to sign applications for policies binding themselves in such terms as in effect would in almost every instance defeat recovery against the company. In the negotiating of a contract of that kind, it is seldom that the individual is a match for the corporation. The application is voluminous in questions the applicant is required to answer, covering the period of his whole life and relating to subjects some of which are material and some trivial, but the absolute truth of all of which he is required to warrant, and if after he is dead and his widow asks pay of the policy, it should turn out that an answer to a question, whether it related to a matter that was material or immaterial, serious or trivial, was found to be untrue,

the company could with impunity refuse payment. The application for the policy, in the case at bar, is a fair sample of those above commented on. Insurance companies, conducted by honorable men, doubtless sometimes use such applications with the confidence in their own integrity that they would not refuse payment if the untrue answer related to a trival matter. But the policy of the law is not to leave the adjustment of the claim to the conscience of the debtor. It was to guard against the abuse of such advantage that the General Assembly passed this law in 1874.''

While the opinion from which the above excerpt is taken did not become the opinion of the court, although the decision of the court reached the same result, yet the court gave the same object and purpose of the statute in the case of Schuermann v. Union Central Life Ins. Co., 165 Mo. 641, 650, where, speaking of what is now Section 5732, the court said:

''Its manifest aim and object was to check and prevent the wrongs and injustice that too frequently befell the relatives and friends of the insured after their death, resulting from the growing evil practiced by life insurance companies, *of calling for answers* to all manner of immaterial questions from the applicant for insurance, bearing in the remotest degree, if at all, upon the risk to be assumed, and then by a general provision, incorporated in the policy to be issued, declaring that if any one of the answers be untrue, or not as stated, it should avoid the policy, which condition without legislative aid, the courts were compelled to enforce without regard to whether the particular answer that was shown to be untrue was material to the risk or not, or whether the untrue answer was the result of an innocent mistake or an intentional wrong.'' (Italics ours.)

This statement of the purpose of the statute is to be found practically reiterated in Burns v. Metropolitan Life Ins. Co., 141 Mo. App. 212, 216; Keller v. Home Life Ins. Co., 198 Mo. 440, l. c. 455; Bruck v. John Hancock Mutual Life Ins. Co., 194 Mo. App. 529, 586; Aetna Life Ins. Co. v. Daniel, 42 S. W. (2d) 584, l. c. 588; Kern v. Legion of Honor, 167 Mo. 471, 487.

Again, it cannot be correctly said that any ''misrepresentation'' within the meaning of the statute was made in the case at bar. A ''misrepresentation'' is defined in 40 C. J., p. 1225, as ''a statement made by a party that a thing is in fact in a particular way, when it is not so.'' ''Misrepresentation,'' as used in insurance law, means ''a false statement touching matters material to the risk.'' [Zacknick v. Hanover Fire Ins. Co., 225 S. W. 135, 139.] ''A 'misrepresentation' is that which, if accepted, leads the mind to an apprehension of a condition other and different from that which exists. Colloquially, it is understood to mean a statement made to deceive or mislead.'' [Haigh v. White Way Laundry Co., 164 Iowa, 143, 147.]

We have examined the cases cited by plaintiff in support of his theory of the case, but in every one, so far as we have found, the company took an "application" from the insured and made an examination. The matters misrepresented arose out of the application and examination and consequently the cases were within the statute since the misrepresentations arose out of "obtaining or securing" the policy. In Williams v. Mutual Life Ins. Co., 283 S. W. 64, the court remarks that "the statute applied to *all* the terms of *every policy,*" etc. As there was an application in that policy wherein the misrepresentations were charged to have been made, the statement that the statute applied to "*every* policy" of course was not meant to be as broad as it sounds, or, if it did, it is *obiter* as to a policy not similar to the one then under consideration.

It is needless to analyze cases further. As attempted to be set forth hereinabove, my view is that the said additional provision involved herein, making the policy void as to persons maimed, crippled or deformed, clearly shows that the policy does not cover such persons but said provision created an "excepted risk," that is, a risk excepted from those risks which the contract agreed to cover. This exception, the Insurance Company had a right to make and the plaintiff is bound by the terms of the policy. [Brown v. Railway Passenger Ins. Co., 45 Mo. 221.] As said in Hawkeye Commercian Men's Assn. v. Christy, 294 Fed. 208, 213, by its express terms without exception or limitation, the policy declares that it shall be void as to persons maimed, crippled or deformed and this provision "was intended to, and by its clear and simple terms does, exempt the defendant from all liability" to all persons in such physical condition. This case does not come within the rule that when a *prima facie* case for the jury is made, the case must be submitted to the jury as they are the judges of the facts. It is an exception to this general rule. Here, the plaintiff admits the existence of the provision in the policy and that his physical condition brings him within the terms of the exception, and, as said in Wendorff v. Missouri State Life, *supra,* there is no issue of fact to be submitted to the jury. By the unmistakable and express terms and conditions of the policy it does not cover persons in the physical condition of plaintiff. To hold otherwise, and to declare defendant liable upon any theory of construction, is to remake a contract for the parties; but this we cannot do. Such provisions in accident policies exempting certain classes are recognized as valid and binding.

As said before, as I see and understand this case, there is nothing in it to bring it within the provisions of Section 5732, Revised Statutes Missouri 1929, in reference to misrepresentations made in securing or obtaining a policy of insurance. And the excepted risk cannot be brought within the terms of the policy by turning the case

into one involving misrepresentation. Indeed, there was no representation or misrepresentation of any kind either by the insured in obtaining the policy or by the insurer in issuing and delivering it. The statute, Section 5732, applies to representations made in applying for a policy and in reliance upon which the policy was issued. The defendant had the right to choose whom it would insure. It could and did refuse to insure persons maimed, crippled or deformed. The result is, therefore, from all that has been said above, that the defendant's demurrer should have been sustained and all of plaintiff's instructions refused. The judgment is reversed. *Shain, P. J.,* concurs; *Bland, J.,* concurs in result.