### SULZBACHER v. TRAVELERS INS. CO.
#### No. 12513.

Circuit Court of Appeals, Eighth Circuit.
Aug. 2, 1943.

Rehearing Denied Aug. 31, 1943.

---

[1] Not released by court at date of publication.

See, also, 2 F.R.D. 491.

Alton Gumbiner, of Kansas City, Mo. (Miller, Gumbiner, Sheffrey & Van Valkenburgh, of Kansas City, Mo., on the brief), for the appellant.

Clay C. Rogers, of Kansas City, Mo., (Mosman, Rogers, Bell & Conrad, of Kansas City, Mo., on the brief), for the appellee.

Before SANBORN, WOODROUGH, and RIDDICK, Circuit Judges.

RIDDICK, Circuit Judge.

This action was brought by the appellant, Gertrude R. Sulzbacher, to recover upon a policy of accident insurance issued to her husband, Dr. Bruno L. Sulzbacher, in which the appellee, The Travelers Insurance Company, agreed, to the extent and subject to conditions provided in the policy, to indemnify the insured against loss resulting from bodily injuries effected directly and independently of all other causes, through external, violent, and accidental means. The policy provided indemnity for loss of life, limb, sight, and time caused by accidental injuries. While the policy was in force, insured lost his life as the result of injuries sustained in an accident. Appellant sued as beneficiary under the policy to recover the indemnity therein provided for loss of life, and as the sole residuary legatee under the will of the insured to recover the indemnity for insured's loss of time. Appellee successfully defended on the ground that the policy did not cover the accident which resulted in insured's injury.

In view of the questions presented on this appeal, it is necessary to state the material provisions of the policy. The insuring clause of the contract is as follows: "The Travelers Insurance Company, Hartford, Connecticut, Does Hereby Insure Bruno L. Sulzbacher, under classification Physicians & Surgeons, by occupation a Physician & Surgeon-Office and Travel Duties, against loss resulting from Bodily Injuries, effected directly and independently of all other causes, through External, Violent and Accidental means (Suicide, sane or insane is not covered), as specified

in the following Schedule, subject to the provisions and limitations hereinafter contained." This clause is followed by a "Schedule of Indemnities" and the statement that the principal sum of the policy is $30,000. The Schedule of Indemnities is divided into Parts A to G, inclusive.

So far as material here, Part A is as follows: "Death, Dismemberment, Loss of Sight—Single Indemnity. If such injuries shall wholly and continuously disable the Insured from date of accident from performing any and every kind of duty pertaining to his occupation, and during the period of such continuous disability but within Two Hundred Weeks from date of accident, shall result, independently and exclusively of all other causes in any one of the losses enumerated in this part, or within ninety days from the date of the accident, irrespective of total disability, result in like manner in any one of such losses, the Company will pay the sum set opposite such loss and in addition weekly indemnity as provided in Part B to the date of death, dismemberment, or loss of sight; but only one of the amounts so specified and the additional weekly indemnity will be paid for injuries resulting from one accident. For Loss of Life. * * * The Principal Sum."

Part C provides that: "If such injuries are sustained (1) while a passenger in or on a public conveyance provided by a common carrier for passenger service (including the platform, steps or running-board of railway or street railway cars); * * * or are caused * * * (6) by a cyclone or by a tornado; the Company will pay Double the amount otherwise payable under Part A to B of this Policy." Part D of the policy provided for the payment by the insurance company of the cost of surgical operations, if performed on account of a bodily injury covered by the policy. The surgical benefits provided for in the policy were in addition to any other indemnity to which the insured was entitled. By Part E the insured was granted the right to take, in lieu of the weekly indemnity provided for partial and total disability resulting from an injury covered by the policy, a lump sum indemnity in the amount set out in the policy for certain specified bodily injuries.

The schedule of indemnities is followed by certain standard provisions not material here. Thereafter, the policy contained the following under the heading "Additional Provisions": "(a) This insurance shall not cover accident, injury, disability, death or other loss caused directly or indirectly, wholly or partly, by bodily or mental infirmity, ptomaines, bacterial infections (except pyogenic infections which shall occur with and through an accidental cut or wound), or by any other kind of disease; nor shall it cover any injury, fatal or non-fatal, caused directly or indirectly by war or by any act of war, or sustained by the Insured while in military or naval service in time of war, or while in or on any vehicle or mechanical device for aerial navigation, or in falling therefrom or therewith, or while operating or handling any such vehicle or device."

The policy in the form stated became effective on the 17th day of May, 1922, and was kept in force unchanged until the 1st day of August, 1927, when, in consideration of an additional premium to be paid by the insured, it was amended in accordance with a rider attached to and made a part of the policy, as follows: "* * * the Company will pay indemnity, to the extent of the minimum amount provided in the policy, for any loss specified therein which shall result from injuries caused by any of the hazards of aviation while the insured is riding as a passenger either in a licensed passenger airplane or a licensed passenger dirigible airship, provided by an incorporated passenger carrier and while operated by a licensed pilot upon a regular passenger route between definitely established airports. * * *"

On the 12th day of November, 1933, while the policy of insurance, as amended, was in force, the insured was severely injured in the crash of an airplane in which he was being transported from Muskogee, Oklahoma, to Kansas City, Missouri. His death on November 14, 1933, resulted from injuries then sustained. On the day of the accident, which resulted in his death, the insured had gone from his home in Kansas City, Missouri, to Muskogee, Oklahoma, at the call of a patient in the latter city. He made the trip in the airplane in which he was injured. Returning to Kansas City the airplane encountered a severe wind and dust storm, ran out of gas, and in an attempted forced landing collided with a tree and was wrecked.

There is no dispute in the record concerning the manner in which the insured's transportation by airplane from Kansas City to Muskogee and return was arranged.

On the day of the accident the son of the insured called the Stevenson-Weeks Air Service to engage transportation for his father, himself, and an acquaintance to Muskogee and return. Stevenson-Weeks Air Service consisted of Barton Stevenson and William Henry Weeks, who were at the time engaged at the municipal airport in Kansas City in the business, as indicated by their business cards, of airplane distributors, storage, engineering and service repairs, instruction and charter service. Except that they owned no airplanes, Stevenson and Weeks operated the business of transportation of passengers by air exactly as a taxicab company transports passengers by motorcar in cities. They operated no regular flights over established routes between established points. Upon receipt of a call for transportation by air, they arranged with one Tabor for the use of a plane owned by him. Stevenson served as pilot when Tabor was not available to fly his plane. On the occasion in question, Tabor furnished the plane to Stevenson and Weeks for the trip to Muskogee and also acted as pilot. Stevenson and Weeks sold no tickets entitling persons to transportation by air. Their regular charge for such transportation was thirty cents a mile. In the present case this charge amounted to $75, of which Stevenson and Weeks received $7.50, and Tabor, $67.50 for his services as pilot and for the use of his plane.

The record discloses that in the early part of September, 1933, Stevenson and Weeks organized the Stevenson-Weeks Air Service. At that time they realized the necessity of a corporate organization in order to protect themselves from personal liability incurred in their business. To this end on October 3, 1933, they bought all the capital stock of the Inland Flying Club, Inc., for the consideration of $25. They also rented a hangar at the Kansas City municipal airport where they carried on their business. The entire organization consisted of Stevenson, Weeks, a mechanic, and a night watchman. At the time of their purchase of the capital stock of the Inland Flying Club, Inc., that concern was not engaged in any business and had not been so engaged for several months. The corporation was authorized by charter to engage in the transportation of persons for hire, but the proof is that it had never done so.

Following the purchase of the capital stock of the Inland Flying Club, Inc., Stevenson and Weeks continued to operate as Stevenson-Weeks Air Service. Nothing was done by them in connection with their ownership of stock in the Inland Flying Club, Inc., until the 14th day of November, 1933, two days after the accident involved here, when they held the first meeting of the stockholders of that corporation. At that meeting the new stockholders elected a board of directors and passed a resolution changing the name of the corporation to Stevenson-Weeks Air Service, Inc. Following the stockholders' meeting on November 14, 1933, a meeting of the board of directors of Inland Flying Club, Inc., was held at which officers were elected, Stevenson, as president, and Weeks as secretary-treasurer. A resolution was adopted directing the secretary-treasurer to file with the secretary of state and recorder of deeds in Jackson County, Missouri, the papers necessary to change the name of the company to Stevenson-Weeks Air Service, Inc. This was done, and on November 16, 1933, the secretary of state issued a certificate of the change of name.

Appellant's suit in the District Court set up two causes of action. The first was based on a construction of the policy of insurance under which the appellant claimed the right to recover, under the policy as originally written, double the indemnity provided for the loss of time and for the loss of the life of the insured. The second asserted, in the alternative, a right of recovery in the appellant under the policy, as amended by the rider of August 1, 1927, the recovery in this case being limited to the single indemnity provided for loss of life. The District Court, finding no ambiguity in the policy as originally written, dismissed the first cause of action, holding that the contract of insurance sued on did not provide indemnity for the death of the insured or for the loss of time occurring as the result of the injuries sustained while riding in an airplane. The second cause of action was submitted to the jury upon interrogatories propounded by the Court which the jury answered, returning a general verdict for the insurance company. On this appeal, numerous errors are assigned in respect of the rulings of the trial court on both causes of action. Those worthy of notice are, in respect to the first cause of action, that the Court erred in denying the construction of the policy demanded by appellant, and, with respect to the second cause of action, that the Court erred in the charge to the jury,

and that the verdict of the jury was without substantial evidence to support it.

In the first cause of action appellant contends that Part A of the policy of insurance is an absolute and unqualified agreement on the part of appellee to pay appellant the principal sum of the policy in the case of the death of the insured resulting from accident "whether the injuries so resulting are covered by the policy or not." In appellant's view, whether the injuries which resulted in the death of the insured were insured against is of no importance on the question of appellant's right to recover for the death of the insured. On this premise, appellant says the exclusion clause, exempting from coverage injuries sustained by insured while riding in an airplane, is in irreconcilable conflict with Part A of the policy and is, therefore, void. The argument runs counter to the plain provisions of the policy.

The insurance granted in the policy was not an insurance against injury or against death, but an insurance against the loss resulting from bodily injuries effected through accidental means, and, by the terms of the insuring clause, this insurance was expressly made subject to the provisions and limitations "hereinafter contained" in the policy. Provisions in accident policies excluding certain classes or kinds of injuries or causes of death from coverage by the insurance granted, or exempting from the coverage provided by the policy loss resulting from injuries received from certain causes or while engaged in hazardous enterprises are recognized as valid and binding upon the parties. Scales v. National Life & Accident Ins. Co., Mo.App., 186 S.W. 948, 950; Robyn v. New Amsterdam Casualty Co., Mo.App., 257 S.W. 1065, 1068. In the present policy the insured did not become liable to pay the principal sum in the policy in the event of death of the insured from any accidental cause whatever. It expressly agreed to pay for death as a loss resulting from an accident insured against, excluding accidents occurring while insured was riding in or on any vehicle or mechanical device for aerial navigation. There is no irreconcilable antagonism between the exclusion clause in the policy and any other part of the policy when the whole instrument is given a reasonable interpretation. In such circumstances courts are without power to strike from a contract a clause which the parties have written into it.

Appellant further contends that even if there is no repugnancy between the exclusion clause in the policy and its general provisions granting insurance, nevertheless, properly construed, the exclusion clause does not exclude from the coverage of the policy the death of the insured in the circumstances of this case. The words of the exclusion clause material here are that "this insurance shall not cover any injury, fatal or non-fatal * * * sustained by the insured while in or on any vehicle or mechanical device for aerial navigation or in falling therefrom or therewith." Appellant's position here is that death sustained by the insured while riding in or on a vehicle designed for aerial navigation or while falling therefrom or therewith is not included within the meaning of the phrase "injury, fatal or non-fatal." Death, so the argument runs, is not a fatal injury within the ordinary and usual meaning of the language used, but is the result of a fatal injury. Appellant argues that the interpretation of the exclusion clause adopted by the learned District Judge confuses cause and effect. We agree with the District Judge that to state this argument is to answer it. It involves a strained and unnatural construction of the language used in the policy. In plain terms, the policy provides indemnity for losses due to accidental injuries, among the losses specified, being death; but, in equally plain terms, it excludes from the injuries causing loss for which indemnity is provided those which were sustained by the insured while riding in or on a vehicle designed for aerial navigation. Death from a fatal injury is a loss resulting from such injury and is expressly and plainly excluded from the losses covered by the policy when the injury is sustained while riding in or on an airplane. Nor is there any ambiguity or double meaning in the exemption clause in the policy under consideration. Giving the language there used its plain and ordinary meaning and taking it, as we must, in connection with the other provisions in the policy the intention of the parties to exclude from its coverage any injuries sustained by the insured while riding in or on an airplane is plainly and explicitly expressed.

The policy of insurance in this case is a Missouri contract to be interpreted or construed, if the necessity for construction arises, according to the principles followed by Missouri courts in the interpretation and construction of con-

tracts. The Missouri decisions are in full accord with the views above expressed. Policies of insurance, like other contracts, must receive a reasonable interpretation consonant with the apparent object and plain intent of the parties. The fact that the subject of a contract is insurance does not in any respect change the rules for its construction. Reed v. Travelers' Ins. Co., 227 Mo.App. 1155, 60 S.W.2d 59, 61. In ascertaining the intention which the parties have expressed in the contract, courts will give to the language used its natural, ordinary, and appropriate meaning. When that is done and the contract is clear and unambiguous, courts have no power except to enforce it as written. Prange v. International Life Ins. Co., 329 Mo. 651, 46 S.W.2d 523, 526, 80 A.L.R. 950. The necessity for construction arises only when, after giving the language used its ordinary and usual meaning, there still remains an ambiguity in the contract. In such cases the ambiguity is resolved against the party responsible for it, which is to say, regarding insurance policies, that the contract is to be construed against the insurer and in favor of the insured. But the presumption prevails that every clause in the contract was intended by the parties to have meaning and effect, and no clause will be rejected except as a last resort to remove an ambiguity otherwise impossible of resolution. "The just interpretation of a contract arises on the whole subject-matter. It must be viewed from end to end and corner to corner, and all its terms pass in review; for one clause may modify, limit, or illuminate the other. Taking its words in their ordinary and usual meaning, no substantive clause must be allowed to perish by construction, unless insurmountable obstacles stand in the way of any other course. Seeming contradictions must be harmonized away if that course be reasonably possible." Mathews v. Modern Woodmen, 236 Mo. 326, 342, 139 S.W. 151, 155, Ann.Cas.1912D, 483; State ex rel. Security Mut. Life Ins. Co. v. Allen, 305 Mo. 607, 267 S.W. 379, 381; Meredith v. Business Men's Accident Ass'n, 213 Mo. App. 688, 252 S.W. 976; Larabee Flour Mills v. West Plains Commission Co., 216 Mo.App. 257, 262 S.W. 389.

 The rule requiring the construction of an insurance policy favorable to the insured in cases of ambiguity does not justify a strained interpretation of the language of the contract in order to create an ambiguity where none exists. "The natural obvious meaning of the provisions of a contract should be preferred to any curious hidden sense which nothing but the exigencies of a hard case and the ingenuity of a trained and acute intellect would discover." Standard Life & Accident Ins. Co. v. McNulty, 8 Cir., 157 F. 224, 226; Wendorff v. Missouri State Life Ins. Co., 318 Mo. 363, 1 S.W.2d 99, 102, 57 A.L.R. 615; Parker-Russell Min. & Mfg. Co. v. Ins. Co., 209 Mo.App. 503, 240 S.W. 248, 249; Miller v. Missouri State Life Ins. Co. 168 Mo.App. 330, 153 S.W. 1080.

 Moreover, if ambiguity may possibly be found in the policy under consideration, it appears that, long before the accident which gives rise to this suit occurred, the parties by their conduct had construed the policy against the contentions now advanced. No better mode of ascertaining the proper construction of a contract can be found than that afforded by the actions of the parties under it. City of St. Louis v. Laclede Gas Light Co., 155 Mo. 1, 55 S.W. 1003. 1008; School Dist. of Independence v. Wilcox, Mo.App., 58 S.W.2d 1009. It is impossible to believe that the insured or insurer interpreted the policy as originally written to cover the result of injuries received by insured while traveling in an airplane in view of the conduct of the parties in amending the policy to include such a coverage. If the insured had construed the policy as originally written to protect him against the hazards of aerial navigation, he certainly would not have found it necessary to amend the policy to provide that coverage; nor to pay an additional premium to secure a coverage less than that appellant now claims was always his under the original policy.

 The Missouri cases relied upon by appellant do not sustain her position. State ex rel. Mutual Ben. Health & Accident Ass'n v. Shain, Mo., 166 S.W.2d 484; Wheeler v. Mutual Benefit Health & Accident Ass'n, Mo.App., 157 S.W.2d 554; Boillot v. Income Guaranty Co., 231 Mo. App. 531, 102 S.W.2d 132; State ex rel. Security Mutual Life Insurance Company v. Allen, supra. In each of these cases the court found a real ambiguity in the policy involved, which made construction necessary, and, in construing the contract before it, followed the rules stated above.

It is sufficient to say of these cases that they involve contracts different materially from the one before the Court in the present case. In the nature of things, cases construing a particular contract can not have controlling force in a case involving another and different contract. However, Missouri cases involving policies very similar to the policy here sustain the conclusions we have reached. See Wendorff v. Missouri State Life Ins. Co., supra; Meredith v. Business Men's Accident Ass'n, supra.

At the conclusion of all the testimony, the trial court on motion of appellee dismissed the suit on the policy in its original form. It took under advisement appellee's motion to dismiss the action on the policy as amended by the rider of May 1, 1927, submitting the questions of fact arising on that branch of the case to the jury on a charge in all respects the same as requested by appellant, except that it was stated in the language of the court and not in the language of appellant's counsel.

In submitting this branch of the case to the jury, the court propounded to the jury certain interrogatories designed to elicit the finding of the jury on specific questions of fact involved. The jury rendered a general verdict in favor of appellee, making answers to the interrogatories requiring such a verdict. In our opinion, had the verdict been otherwise, the trial judge would have been compelled to set it aside and enter a judgment non obstante veredicto, as he indicated to counsel at the time he let the case go to the jury, taking appellee's motion to dismiss under advisement.

 By the terms of the rider, the policy indemnified the insured for loss of life as the result of the hazards of aerial navigation only if at the time of the accident the insured was riding as a passenger in a licensed passenger airplane, provided by an incorporated passenger carrier, operated by a licensed pilot upon a regular passenger route, between definitely established airports. This was the theory of appellant at the trial below, and the theory upon which this phase of the case went to the jury under a charge requested by appellant. The court's charge on this phase of the case was correct, but, if there had been error in it, appellant having invited the charge could not now be heard to complain. Union Electric Light & Power Co. v. Snyder Estate Co., 8 Cir., 65 F.2d

297; Parrott Estate Co. v. McLaughlin, 9 Cir., 89 F.2d 188.

 In answer to interrogatories propounded by the court, the jury found that the airplane in which the insured was riding at the time of his fatal injury was not provided by an incorporated passenger carrier, but was provided by Stevenson and Weeks acting as individuals. No other finding would have been justified under the evidence. The mere fact, relied upon by appellant, that Stevenson and Weeks were the owners of the capital stock of a corporation empowered by its charter to engage, but never engaged, in the transportation of passengers by air, affords no basis for the finding that the corporation in question provided the airplane for the trip in which the insured met his death. Neither Stevenson nor Weeks was a director or officer of the Inland Flying Club. Inc., at the time the plane was provided for Dr. Sulzbacher. The plane in question was not owned by the Inland Flying Club, Inc., but was in fact hired from an individual by Stevenson and Weeks or by one of them. Under the evidence in this case, neither Stevenson nor Weeks was authorized to act for the Inland Flying Club, Inc., in any capacity or in any transaction. Jones v. Williams, 139 Mo. 1, 39 S.W. 486, 40 S.W. 353, 37 L.R.A. 682, 61 Am.St.Rep. 436; 3 Fletcher Cyclopedia Corporations, Section 1726. Under the evidence the jury was compelled to find as it did that the airplane in the present case was provided by Stevenson and Weeks acting in their individual capacities. This being the case, it is unnecessary for us to consider or to decide whether, at the time of the crash of the airplane, Dr. Sulzbacher was a passenger or whether the airplane was being operated upon a regular passenger route between definitely established airports within the meaning of those words and expressions as used in the rider.

We have examined the other assignments of error advanced by the appellant, and find them wholly without merit. We think it proper to add, however, in view of the argument in appellant's brief, that there is nothing whatever in the record before us to justify appellant's contention that she was denied a fair trial or that the learned District Judge prejudged her cause of action. On the contrary, the record shows what the questions of law arising in the course of the trial were ruled by the trial judge correctly and with dis

crimination, resolving all reasonable doubts favorable to the appellant, and giving to the contentions of her counsel a consideration which, on the merits, they hardly deserved.

The judgment appealed from is affirmed.

WOODROUGH, Circuit Judge, concurs in the result.