269 F.Supp. 315 (1967)
SOUTHWESTERN BELL TELEPHONE COMPANY, a Corporation, Plaintiff,
v.
The WESTERN CASUALTY AND SURETY COMPANY, a Corporation, Defendant.
No. 66 C 186(2).
United States District Court E. D. Missouri, E. D.
April 12, 1967.
*316 John Mohler, Michael Grove, John D. Rahoy, and Jean Chas. Smith, St. Louis, Mo., for plaintiff.
Rene J. Lusser, St. Louis, Mo., for defendant.

MEMORANDUM
MEREDITH, District Judge.
Plaintiff Southwestern Bell Telephone Company (a Missouri corporation, hereinafter referred to as "Bell") brings this action for a declaratory judgment with regard to an insurance policy issued to it by defendant The Western Casualty and Surety Company (a Kansas corporation, hereinafter referred to as "Western"). The insurance contract between plaintiff and defendant provided that defendant would defend and pay damages assessed in certain suits against Bell by certain persons provided certain criteria were met. The requisite amount in controversy has been stipulated by the parties, and we, therefore, take jurisdiction under Title 28 U.S.C.A. §§ 1332 and 2201.
This case grows out of an accident involving three workmen who were injured while enlarging a manhole owned by Bell. The workmen were employed by Missouri Conduit and Construction Company, which was operating as an independent contractor under a contract with Bell to enlarge several manholes in the City of St. Louis. On or about September 27, 1965, three workmen, Messrs. Belt, Mosley and Washington, were injured when, during the course of operations to enlarge one of the manholes, they struck an energized electric power cable and suffered severe electrical shocks. Each of the workmen filed suit against Bell, and Bell requested Western to defend the suits and to pay any amounts Bell might become legally obligated to pay as a result therefor, up to the maximum amounts stated in Bell's insurance policy with Western. Defendant refused to defend the suits on the grounds that the claim on which the actions were based is not within the coverage of the policy. Plaintiff then instituted this suit for declaratory judgment, in which it requests this Court to construe the contract, to determine the rights of the parties thereunder, and to make any further orders which the Court deems proper.
It is a well-established principle of construction that under Missouri law, insurance policies, like other contracts, must receive a reasonable interpretation, and that in ascertaining the intentions of the parties, language will be given its ordinary meaning, Sulzbacher v. Travelers Ins. Co., 137 F.2d 386 (8th Cir. 1943). The parties have stipulated that the relevant portions of the policy in force at the time are as follows:
"Western Casualty and Surety Company
"Agrees with the insured, * * *
"To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, * * * caused by accident and arising out of the hazards hereinafter defined."
"Definition of Hazards
"Division 3Independent Contractors. Operations performed for the named insured by independent contractors and general supervision thereof by the named insured, if the accident occurs in the course of such operations, other than (a) maintenance and repairs at premises owned by or rented to the named insured and (b) structural alterations at such premises which do not involve changing the size of or moving buildings or other structures."
"Exclusions
"This policy does not apply:
"(e) under division 3 of the Definition of Hazards, to any act or omission of the named insured or any of his employees, other than general supervision of work performed for the *317 named insured by independent contractors;"
"Endorsement

"In consideration of the premium charged, the provisions of this policy are amended as follows:
1. Coverage under this policy is limited to operations performed for the Named Insured by Missouri Conduit and Construction Company, Incorporated."
It is clear that the phrase "operations performed for the named insured by independent contractors" contemplates the enlargement of "structures" and explicitly includes such alterations in the hazards covered by the policy should an accident result from them. Defendant argues, however, that Bell was negligent in failing to provide adequate plats and warnings; that, therefore, there was "an act or omission" of the type described in Exclusion (e), and that because the act or omission was "other than general supervision of work performed," Bell is not covered by the insurance policy and must bear the burdens of defense and payment of damages itself.
Bell maintains that it was not negligent. If the issue is litigated and it is found that, in fact, Bell was not negligent, plaintiff will not be obligated to pay any sums to Messrs. Belt, Mosley and Washington and coverage under the policy will be a moot issue. The issue of whether or not Bell was negligent is not before the Court at this time, however; that issue will be determined by a jury in the suits by the above-mentioned individuals. The question before the Court in this case must be: if Bell becomes obligated to pay damages as a result of these accidents, is Western obligated to indemnify Bell up to the maximum amounts allowed for injuries suffered per man and per occurrence?
Western maintains that the Exclusion (e) was included in the contract to avoid liability in cases in which the injury was due to Bell's negligence. Bell insists that even if it is found to have been negligent, the negligent acts fall within the scope of "general supervision" and that, as the exclusion does not apply when the acts or omissions are in the area of "general supervision", Western must indemnify Bell under the provisions of the insurance contract.
The words "general supervision" are not defined in the contract and the cases which use the phrase employ it to describe the relationship between various people on the jobsite, usually with reference to the issue of whether or not there was control so great as to destroy the independent contractor relationship. Duke Power Co. v. Indemnity Ins. Co., 229 F.2d 588 (4th Cir. 1956); Ohio Casualty Ins. Co. v. Flanagin, 44 N.J. 504, 210 A.2d 221 (1965). In the instant case there is no question as to the nature of the relationship; both parties agree that Missouri Conduit was hired as, and remained, an independent contractor. Furthermore, there is no question that the accident occurred "during operations" and "arose from the work", and thus Standard Oil Co. v. Fidelity & Casualty Co. of New York, 66 F.Supp. 603, aff'd 6 Cir., 162 F.2d 715 (W.D.Ky. 1946), and United States Fidelity & Guaranty Co. v. National Paving & Contracting Co., 228 Md. 40, 178 A.2d 872 (Md.Ct.App.1962), cited to us by plaintiff, are not guiding for disposition of the issue at bar.
Research has not revealed any cases or statements interpreting the key phrase "general supervision" and we, therefore, turn to general rules of construction in order to determine its meaning.
Defendant contends that "general supervision" refers and is limited to inspectors and others actually on the premises where the work is being done, and that, as Bell did not have inspectors at the jobsite, it did not exercise its right of "general supervision of the work performed". Plaintiff contends that if it was negligent, the "act or omission" clearly falls within the area of "general supervision" because defendant has admitted that "the alleged acts did not destroy the independent contractor relationship *318 and therefore could be nothing more than general supervision."
When an insurance contract is unambiguous, courts must enforce it as written, Sulzbacher, supra, 137 F.2d at p. 391, but when, after giving language its ordinary meaning, an ambiguity remains, "the ambiguity is resolved against the party responsible for it, which is to say, regarding insurance policies, that the contract is to be construed against the insurer and in favor of the insured." Id., p. 391. (See 44 C.J.S. Insurance § 297, at pp. 1194-1195, for additional citations on this point.) The rule that "in the interpretation of a policy * * it must be liberally construed in favor of the insured, so as not to defeat, without a plain necessity, his claim to the indemnity which, in making the insurance, it was his object to secure", Columbia Paper Stock Co. v. Fidelity & Casualty Co., 104 Mo.App. 157, 78 S.W. 320, was "well-settled" in 1937, Soukop v. Employers' Liability Assur. Corp., 341 Mo. 614, 108 S.W.2d 86, at 91, 112 A.L.R. 149, and has not been altered since.
The scope of the term "general supervision" is defined neither by cases nor custom and, therefore, the scope of activities covered by the term is ambiguous. Thus, the above rule must be applied when construing the undefined phrase "general supervision". A liberal interpretation of the term would surely include supervisory duties both on and away from the jobsite and, thus, instructions, warnings, and the furnishing of maps and plats would be supervisory whether done or omitted to be done at or away from the jobsite.
We, therefore, hold that the alleged negligent acts or omissions of Bell are within the scope contemplated by the phrase "general supervision of the work to be performed", and, thus, that there is coverage under the policy.
Having determined that there is coverage, we apply the rule that "`where it is insurer's duty to defend, and the insurer wrongfully refuses to do so on the ground that the claim upon which the action against the insured is based is not within the coverage of the policy, the insurer is guilty of a breach of contract which renders it liable to the insured for all damages * * *' reasonably flowing from such breach", Landie v. Century Indemnity Co., Mo.App., 390 S.W.2d 558, at 562 (1965). The breaching of the contract by the insurer has the effect of releasing the insured from any policy prohibitions against incurring expenses and negotiating and settling claims, and the insurance company is thus obligated to reimburse the insured for such settlement, and in general to pay such damages as will place the insured in "a position which is equally as good as that which he would have occupied if the (insurance) company had performed its contract." Landie, supra, at 562, 565.
In order to accomplish this result, Western must make payment as follows:
1. Actual defense of the suits filed by Messrs. Belt, Mosley and Washington and payment for all costs, expenses and attorney's fees incurred in such defense, as provided for under "Coverage DII Defense, Settlement and Supplementary Payments, (a) and (b) (2)," which Bell paid in order to conduct defenses which Western wrongfully refused to conduct.
2. To reimburse Bell for any and all amounts recovered from it by Messrs. Belt, Mosley and Washington in suit or in settlement, up to the maximum amounts of $100,000 each person and $300,000 each occurrence, as provided for under "Item 4" of the policy, plus any costs and expenses incurred in the course of suit and/or settlement.
3. Payment of all costs, expenses and attorneys' fees incurred by Bell in its suit against Western to declare its rights under the insurance contract.
Recovery of items (1) and (2) is clearly provided for in the insurance contract and requires no additional explanation. *319 Recovery of item (3) is based on § 375.420, V.A.M.S., and the cases decided thereunder.
The statute provides in relevant part:
"In any action against any insurance company to recover the amount of any loss under a policy of * * * employers' liability * * * if it appear from the evidence that such company has vexatiously refused to pay such loss, the court or jury may * * * allow the plaintiff damages not to exceed ten per cent on the amount of the loss and a reasonable attorney's fee;"
"Vexatious" has been defined as "without reasonable or probable cause", Jones v. Farm Bureau Mutual Ins. Co., Mo. App., 284 S.W.2d 11 (1955). The statute is penal, and must be strictly construed, Cass v. Pacific Fire Ins. Co., Mo.App., 224 S.W.2d 405 (1949), but it is not necessary to prove affirmatively that the delay was "vexatious"; such conclusion may be drawn from the evidence and circumstances of the case. Yankoff v. Allied Mutual Ins. Co., Mo.App., 289 S.W.2d 471 (1956). While there is authority to the effect that the statutory penalty should not be imposed unless refusal was "willful", Adams v. State Auto. Ins. Ass'n. of Des Moines, Iowa, Mo.App., 265 S.W.2d 738 (1954), the insurer's breach of his contract to defend appears sufficiently "vexatious" to indicate that the criteria enunciated in Yankoff, supra, have been met. This position is buttressed by the numerous statements to the effect that damages for breach of contract must place the plaintiff in a position as good as if the contract had been fully and properly performed from the beginning (see Landie, supra), and the statement in Willis v. American National Life Ins. Co., Mo. App., 287 S.W.2d 98 (1956), that the provision allowing plaintiff attorney's fees in an action to recover loss which the insurer vexatiously refused to pay is "a matter of right connected with the performance of the contract, and not entirely of remedy, and such attorney's fees are a part of the insured's `recovery'". (Citations omitted.)
It appears that damages which seek only to restore plaintiff to the position in which he would have been had defendant performed the contract as it provided are not penal, but a matter of right under the circumstances of this case, and we, therefore, hold that in addition to the right to reimbursement for sums expended in the processing and/or settlement of the suits by Belt, Mosley and Washington, and for any amounts for which Bell became obligated as a result of such suits or settlements up to the maximum permitted by the insurance policy, Bell is also entitled to the expenses, costs and attorney's fees incurred in the instant suit.