**ETTMAN v. FEDERAL LIFE INS. CO.**
No. 12559.

Circuit Court of Appeals, Eighth Circuit.
July 30, 1943.

Rehearing Denied Aug. 30, 1943.

122

See, also, 120 F.2d 837.

J. L. London, of St. Louis, Mo., for appellant.

Wayne Ely, of St. Louis, Mo. (Kenneth L. Merley, of Chicago, Ill., on the brief), for appellee.

Before SANBORN, WOODROUGH, and RIDDICK, Circuit Judges.

SANBORN, Circuit Judge.

The substantial question for decision is whether, under Missouri law, a statement in an application for a policy of limited disability insurance, without death benefits, will defeat recovery upon the policy if the statement was untrue and material but made without intent to deceive, and the insured certified to the truth of the statements made in his application, and the policy provided that "The falsity of any statement in the application, materially affecting either the acceptance of the risk or the hazard assumed hereunder, or made with intent to deceive, shall bar all right to recovery under this policy." The appeal is from a judgment for the appellee Company in an action on such a policy.

The policy was issued on January 17, 1928, upon the insured's application dated January 3, 1928. The policy provided for a monthly indemnity of $300 in case of the loss of the sight of both eyes as a result of accident or sickness.[1] The insured lost the sight of both eyes in or about 1936, and thereafter demanded indemnity. The Company denied liability, and the insured brought this action. The defense asserted by the Company was, in substance, that the insured lost his eyesight as the result of a degenerative disease of the eyes known as retinitis pigmentosa; that he had this disease when he applied for the policy and had had it for many years prior thereto; that in his application he answered falsely, and with intent to deceive, certain questions; that if the Company had known that the answers were false, it would not have issued the policy; that the application was attached to and made a part of the policy; that, by the terms of the application, the insured certified that his answers to all questions contained in the application were complete and true; and that he agreed, in both the application and the policy, that the falsity of any answer made with intent to deceive or which was material should bar recovery under the policy.

The issues were tried to a jury. At the close of the evidence, both sides moved for a directed verdict. The court submitted the case to the jury. The theory upon which it was submitted is illustrated by the following portions of the court's charge:

"You will find for the plaintiff, unless you find that the plaintiff had retinitis pigmentosa on January 3, 1928, when the application for this insurance was made; and, second, that, having retinitis pigmentosa he, by his answers to questions in his application for this insurance, stated, either, first, that he did not have and never had had any disease of either eye, or any difficulty with his eyesight; or, second, that he had not within ten years consulted any physician for any disease or difficulty with his eyesight; or, third, that he had never had any serious illness except an appendectomy and herniotomy, and had not been under observation, care or treatment, except for appendicitis and hernia; or, fourth, that Dr. Hart was the last physician consulted by him; or, fifth, that he had no usual medical examiner * * * or, sixth, that he had not been in a hospital or sanitarium, asylum, or similar institution, except for appendicitis and a hernia, and if you find such facts, and if you find that

---

[1] The policy covered only the loss of the sight of an eye or both eyes and the loss of a hand or hands and a foot or feet.

such statements, if any, were actually made, and that any of them were false, and that such statements, if any, which were made were false, misrepresented some matter which actually contributed to the disability for which plaintiff seeks recovery, then you may find that the defense asserted by the defendant has been sustained.

\*     \*     \*     \*     \*

"\* \* \* You will notice that in the instruction that I gave you as to the necessary elements for recovery, I said nothing about any requirement that plaintiff should have fraudulently or dishonestly made a statement, in order to justify a verdict for the defendant. I can tell you simply that, as far as the issues are concerned in this case, under the law no fraud or dishonesty is involved one way or another. The simple questions are as I gave them to you heretofore."

The insured excepted to the failure of the court to submit to the jury the issue whether the answers of the insured to the questions referred to in the charge were fraudulently made. He also excepted to the court's submitting to the jury the issue whether the answers to questions in the application relative to consulting physicians and relative to hospitalization were false and material. The basis for this exception was that, as a matter of law, the answers to such questions were immaterial.

The jury returned a general verdict for the Company. In view of the court's instructions, the verdict constituted a determination that the insured, at the time he applied for the policy in suit, had retinitis pigmentosa; that he answered falsely one or more of the questions contained in his application and referred to in the court's charge; and that the matters misrepresented by the insured contributed to the loss of his eyesight. The verdict was not a determination that the insured knew that he had any eye disease when he applied for the policy or that he was guilty of fraud in making the answers which he made. The insured moved for judgment notwithstanding the verdict and for a new trial. His motions were denied.

The main contentions of the insured are: (1) that, under the evidence and the law, he was entitled to recover; (2) that he did not warrant the truth of his answers; (3) that the Company did not plead or rely upon any warranty that his answers were true; (4) that the Company examined him and knew as much about his condition as he knew himself, and waived any physical defects.

The policy provided:

"This policy is issued in consideration of the statements and agreements contained in the application therefor and the payment of premium as therein provided. Copy of the said application is hereto attached or hereon endorsed and is hereby made a part of this contract. No provision of the charter or by-laws of the Company not included herein shall void the policy or be used in any legal proceedings thereunder.

"The falsity of any statement in the application, materially affecting either the acceptance of the risk or the hazard assumed hereunder, or made with intent to deceive, shall bar all right to recovery under this policy."

The application for the policy contained the following pertinent language:

"Part I.

"I hereby apply to the Federal Life Insurance Company for a Noncancellable Income Policy with 3 months exclusion period, to be based on the following answers and agreements and also the answers that I shall make to the Company's Medical Examiner in continuation of this application, such Policy to provide indemnities of $.... None for accidental Loss of Life and $300.-00 per month for disability, \* \* \*.

\*    \*    \*    \*    \*    \*    \*

"16. Have you ever had or have you now any bodily or mental infirmity or deformity (including hernia and rupture) or have you impaired hearing, any disease of either eye, lost a limb or the sight of an eye, or are you in any respect maimed or in unsound condition mentally or physically? (Give particulars.) *No*.

\*    \*    \*    \*    \*    \*    \*

"19. Do you agree that the falsity of any answer in this application or any answer made to the Company's Medical Examiner in continuance of this application for a policy shall bar the right to recover thereunder if such answer is made with intent to deceive or materially affects either the acceptance of the risk or the hazard assumed by the Company? *Yes*.

\*    \*    \*    \*    \*    \*    \*

"Part II.

"Questions to be asked by the Medical Examiner. \* \* \* In continuation of and forming a part of my application for Insurance to Federal Life Insurance Co.

\*    \*    \*    \*    \*    \*    \*

124

"4. The Applicant must answer each of these questions fully and with special care: Have you now or have you ever had any of the following complaints, symptoms or diseases?

\* \* \* \* \* \* \*

"Difficulty with Eyesight or Hearing. *No.*

\* \* \* \* \* \* \*

"5. Have you within ten years consulted or been treated by a physician or any other practitioner for any ailment or disease not included above? (If so, give dates and full particulars.) *No.*

\* \* \* \* \* \* \*

"7. Have you ever been under observation, care or treatment in any hospital, sanitarium, asylum or similar institution? (If so give details.) *Only for Appendectomy and Herniotomy.*

"8. Who is your usual medical adviser? *None.*

\* \* \* \* \* \* \*

"I hereby certify that before signing I have read the above statements and answers and find each of them recorded as made by me, and that each of the answers made by me as stated in Parts I and II of this application are full, complete and true."

The application was signed by the insured and witnessed by John C. Salter, the Company's medical examiner, and a copy of it was attached to the policy.

The evidence showed that the insured had retinitis pigmentosa at the time he applied for the policy; that he had had this disease for many years prior thereto; that his vision had been seriously affected by it; that when he was approximately sixteen years old, in the year 1911, he had been taken by his mother to Doctor Meyer Wiener, of St. Louis, an eminent specialist in diseases of the eye, because the insured, who was then attending school, was unable to see the writing on the blackboard; that Doctor Wiener discovered that the insured had retinitis pigmentosa, but, at his mother's request, did not disclose that fact to him; that the Doctor knew that the insured would eventually lose his eyesight, but did not tell the insured and doubts

whether the insured knew it. The evidence also showed that the eye condition caused by the disease kept the insured out of military service in 1918, when he was twenty-two years of age; that he claimed exemption because of his bad eyesight and was classed with those unfit for military service, after an examination which disclosed the probable presence of the disease; that the insured continued to be a patient of Doctor Wiener and his associates, and frequently consulted them and was examined and treated by them, both prior and subsequent to the issuance of the policy in suit.[2]

The answers to the questions in the application for the policy in suit which negatived the existence of any disease or difficulty with the insured's eyes, and the answers which indicated that the insured had not consulted any physician with respect to his eye condition or received treatment or hospitalization therefor, were shown by the evidence to be untrue.

The insured testified that he did not read the application; that the agent who wrote the policy answered the questions in Part I of the application; that the insured was at the office of Doctor Salter, the medical examiner for the Company, at the time Part II of the application was made out; that in answer to the question, "Difficulty with Eyesight or Hearing," the insured told the examiner that he was nearsighted. Following this evidence, he testified that he did not remember that question having been asked by Doctor Salter. Upon inquiry by the court as to the insured's answer to the question above quoted, the insured stated, "I never had any difficulty with my eyes and I said 'No'." The insured was then asked by his counsel if he had had any conversation with Doctor Salter about his eyes. The answer was, "No, sir." Then followed this question, "What do you mean when you say you told him you were near-sighted?" The answer was: "He asked me if I had any trouble with my eyes and I said I was near-sighted, and the question I said 'No' on, I didn't say 'No.' Now I remember that I said 'Yes,' because I told him I was near-sighted." The insured further testified that about two weeks

[2] The records of Doctor Wiener's office disclosed visits by the insured upon the following dates: April 21 and 22, 1911; May 17, 1916; September 25, 1917; October 1, 1917; January 5, 1918; January 7 and 8, 1918; July 11, 1919; January 7, 1920; April 16, 1920; June 16, 1920; October 27, 1920; April 1, 1922; December 10, 1923; July 16, 1928; August 24, 1934; December 7, 1937.

In 1918, Doctor Wiener placed the insured in the Barnes Hospital, at St. Louis, for observation and to ascertain, if possible, the cause of the eye disease.

before he was examined by Doctor Salter for the Company, he had advised Doctor Salter that he (the insured) was nearsighted—this in connection with an examination which Doctor Salter had made of the insured for the Northwestern Mutual Life Insurance Company. On cross-examination, the insured testified that at the time he applied for the policy in suit he was nearsighted and "that is all." He stated that, in answer to the question in the application, "Have you within ten years consulted or been treated by a physician or any other practitioner for any ailment or disease not included above? (if so, give dates and full particulars)," he thought he told Doctor Salter "No"; that he never considered consulting an oculist as being treated; that the oculist he consulted did not prescribe for him, "he just gave me glasses"; that the insured did not consider that he was being treated while in the hospital as Doctor Wiener's patient; that he had consulted Doctor Wiener about his eyes after he consulted Doctor Hart about his appendix; that he did not consider his eye condition an ailment, a disease or a physical deficiency. He explained his having applied for exemption from military service in 1918 on account of "bad eyesight" and "weak eyes" by stating: "Well, I knew I was near-sighted and I didn't think they would use anybody in the army that had glasses"; and that he considered himself sound, but nearsighted. The insured testified that he had never been told, and did not know at the time he made his application for the policy in suit, that he had an eye disease.

Doctor Salter, who examined the insured for the Company, testified, in substance, that, in accordance with his custom in examining applicants for insurance, he asked the insured the questions contained in Part II of the application, and recorded the insured's answers; that he (Doctor Salter) made a note on his record of the examination that the insured had "moderate myopia," which meant to him (the Doctor) a degree of nearsightedness requiring a heavy lens to correct, but did not indicate to him the existence of any disease of the eyes.

The District Court was of the opinion that, by the terms of the contract of insurance, of which the application was a part, the answers of the insured were warranties, and that if any of them was material and false it would avoid the policy whether made innocently or not. The insured argues that, under the law of Missouri, in order to avoid this policy, the answers, if material, must have been both false and fraudulent.

In Missouri, to avoid a contract of insurance, a false representation of a material fact must have been fraudulently made. Grand Lodge, U. B. of F., etc., v. Massachusetts Bonding & Ins. Co., 324 Mo. 938, 25 S.W.2d 783, 787. See, also, Houston v. Metropolitan Life Ins. Co., 232 Mo. App. 195, 97 S.W.2d 856, 859; De Valpine v. New York Life Ins. Co., Mo.App., 105 S.W.2d 977, 980; New York Life Ins. Co. v. Calhoun, 8 Cir., 114 F.2d 526, 544.

The common law distinction between statements of an insured which constitute representations and statements which are warranted to be true, is recognized in Missouri. In Grand Lodge, U. B. of F., etc., v. Massachusetts Bonding & Ins. Co., supra, 25 S.W.2d at page 787, the Supreme Court of Missouri said: "There is a distinction between a representation and a warranty. A representation is not, strictly speaking, a part of the contract, or the essence of it, but rather something collateral or preliminary, and in the nature of an inducement to it, while a warranty enters into and forms a part of the contract itself."

In Pacific Mut. Life Ins. Co. v. Glaser, 245 Mo. 377, 150 S.W. 549, 551, 45 L.R.A., N.S., 222, the Court said: "In cases not included within the provisions of said section 6937 [(R.S.Mo. 1909), the Missouri Misrepresentation Statute, § 5843, R.S.Mo. 1939, Mo.R.S.A. § 5843], a well-recognized distinction exists between a representation and a warranty in a contract of insurance. A representation is not a part of the contract, 'but only an inducement to make it,' and will not invalidate the insurance unless false in a matter material to the risk. A warranty is a part of the contract, and must be strictly true, whether material to the risk or not. Aloe v. [Mutual Reserve Life] Ass'n, 147 Mo. 561, 49 S.W. 553; McDermott v. Modern Woodmen, 97 Mo. App. 636, 71 S.W. 833; 3 Cooley's Briefs on Law of Ins. pp. 1935, 1954. In Cooley, supra, at page 1935, the author says: 'In pursuance of the general rule that statements and stipulations contained in or expressly made a part of the policy are warranties, it has been the generally accepted doctrine that where the application warrants the answers and statements therein to be full, complete, and true, and the policy

recites that it is issued in consideration of the statements, agreements, and warranties in the application, which is referred to and made a part of the contract, such statements and agreements become warranties.' And at page 1954: 'It is, however, well settled that a breach of warranty is fatal to the policy, though the insured had no knowledge of the falsity constituting the breach, and did not intend to deceive the insurer.'"

In Houston v. Metropolitan Life Ins. Co., 1936, supra, 232 Mo.App. 195, 97 S.W.2d 856, 860, the St. Louis Court of Appeals said: "The rule in this state, as we understand it, is that where material representations made in an application for a policy of life insurance are warranted to be true, or the policy is conditioned upon the truth of the representations, or provides that the falsity of the representations shall avoid the policy, then the representations, if in fact untrue, will avoid the policy, though the representations were innocently made. This is so because such is the contract. The insurer is entitled to stand on the contract as written, and the innocence of the insured in making the representations is a matter of no concern. But where there is no such warranty or provision in the policy a misrepresentation, in order to avoid the policy must have been fraudulently made. This is the rule applicable to contracts generally, and we see no reason why an exception should be made with respect to insurance contracts."

This rule was restated in substantially the same words in De Valpine v. New York Life Ins. Co., Mo.App., 105 S.W.2d 977, 980, and Id., Mo.App., 131 S.W.2d 349, 352.

The rule in Missouri for determining whether a statement in an application for insurance is a warranty appears to be in accord with the general law on the subject. In 29 American Jurisprudence, Insurance, p. 430, § 533, it is said: "In the absence of statute, whether a statement made by the insured in a policy of insurance is a warranty depends upon the intention of the parties in regard thereto, as determined by a consideration of the entire contract, the language used, the subject matter, and the position of the parties, and upon whether the minds of both parties consented that such should be the interpretation of the statements made."

See, also, the opinion of this Court in Bankers' Reserve Life Co. v. Matthews, 8 Cir., 39 F.2d 528, 535–537. Compare Pacif-ic Mut. Life Ins. Co. v. Glaser, supra, 245 Mo. 377, 150 S.W. 549, 45 L.R.A.,N.S., 222.

The policy in suit expressly made the application a part of the contract of insurance. The insured certified to the truth of the answers to the questions in the application, and, by the terms of the policy, his agreement was that if any of the answers was false and material his right to recover should be barred. That agreement is subject to enforcement unless contrary to some statute or some decision of the courts of Missouri. Bankers' Reserve Life Co. v. Matthews, supra, 39 F.2d 528, 536.

At the time this policy was applied for, the State of Missouri had a "misrepresentation statute," which is now § 5843, R.S.Mo. 1939, Mo.R.S.A. § 5843. It provides: "No misrepresentation made in obtaining or securing a policy of insurance on the life or lives of any person or persons, citizens of this state, shall be deemed material, or render the policy void, unless the matter misrepresented shall have actually contributed to the contingency or event on which the policy is to become due and payable, and whether it so contributed in any case shall be a question for the jury."

We shall not in this case attempt to determine what effect this statute has had in Missouri upon the distinction between warranties and representations with respect to life insurance policies. Strangely enough, that appears to be still a debatable question in Missouri after nearly seventy years. The statute is not applicable to the policy in suit. The parties and the District Court have assumed that it is. However, the power of this Court to deal with a plain error of law not raised or argued can not be doubted. United States v. Harrell, 8 Cir., 133 F.2d 504, 506, 507, and cases cited. The statute relates to "a policy of insurance on the life or lives of any person or persons." The policy in suit is not a life policy, but is a disability policy which contains no provision for any death benefit. The application shows that no indemnity for loss of life was asked for by the insured. Under Missouri law, an accident policy which covers accidental death is a policy on life and within the statute. Lamport v. General Accident, Fire & Life Assur. Corp., 272 Mo. 19, 197 S.W. 95, 100; Boillot v. Income Guaranty Co., 231 Mo. App. 990, 83 S.W.2d 219, 223; Reed v. Travelers' Ins. Co., 227 Mo.App. 1155, 60 S.W.2d 59, 61; Williams v. Mutual Life of Illinois, Mo.App., 283 S.W. 64; Makos v.

Bankers' Acc. Ins. Co., Mo.App., 234 S.W. 369, 370; Lynn v. Business Men's Assur. Co., 232 Mo.App. 842, 111 S.W.2d 231, 237.

In Williams v. Mutual Life of Illinois, supra, 283 S.W. at page 64, the Springfield Court of Appeals said: "The language used in this statute confines its application to policies on the life of persons insured. It does not purport to apply to all policies issued by a corporation doing a life insurance business, but its application is limited to policies on life."

In Lamport v. General Accident, Fire & Life Assur. Corp., supra, 197 S.W. at page 100, the Supreme Court of Missouri said with respect to an accident policy: " * * * It has been held that a policy of this character, at least with reference to those portions providing indemnity for loss of life, were policies of life insurance, within the meaning of the suicide statute of this state. Logan v. Fidelity & Casualty Co., 146 Mo. [114], 115, 47 S.W. 948. By like reasoning, such a policy, or at least so much thereof as relates to indemnity for loss of life, would likewise be a 'policy of insurance on life,' within the scope of section 6937, Revised Statutes 1909 [§ 5843, R.S. Mo. 1939, Mo.R.S.A. § 5843] * * *."

In Logan v. Fidelity & Casualty Co., 146 Mo. 114, 47 S.W. 948, 951, the court ruled: "Insurance on life includes all policies of insurance in which the payment of the insurance money is contingent upon the loss of life."

It is possible that the courts of Missouri may, by construction, expand this statute to cover every kind of policy written by a company authorized to write insurance on life (see Reed v. Travelers' Ins. Co., supra, 227 Mo.App. 1155, 60 S.W.2d 59, 60, 61; Drucker v. Western Indemnity Co. of Dallas, Tex., 204 Mo.App. 516, 223 S.W. 989, 990, 991), but as yet they have apparently not done so. In the absence of compelling authority, this Court will not rule, intimate or agree that the statute applies to the policy in suit. See Business Men's Assur. Co. of America v. Scott, 8 Cir., 17 F.2d 4, 6; McReynolds v. New York Life Ins. Co., 8 Cir., 122 F.2d 895, 899.

■ The insured can not complain of the trial court's having applied the Misrepresentation Statute to his case, since that gave him the benefit of a more favorable rule relating to the materiality of the statements made by him in his application than he was entitled to under his policy.

■ Since the Misrepresentaation Statute has no application to the policy in suit, the common law rule of Missouri applies. The statements made by the insured in his application were warranties, and the question whether the statements were innocently or fraudulently made was not a material issue in the case. Pacific Mut. Life Ins. Co. v. Glaser, supra, 245 Mo. 377, 150 S.W. 549, 551, 45 L.R.A.,N.S., 222.

■ The other contentions of the insured have been examined, but do not require discussion. The Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, govern pleading, practice and procedure in the courts of the United States. These rules contemplate that every litigant shall have a trial of his case upon its merits and in accordance with the evidence and the applicable law. Whether the Company assumed in its pleadings and upon the trial that it must prove an intent on the part of the insured to deceive is of no consequence. The evidence received was within the issues made by the pleadings, and it was the duty of the trial court to apply the proper rules of law to the fact situation. There was, as the court ruled, no adequate basis for charging the Company with knowledge of the existence of a disease which the insured himself testified he had not discovered, although the evidence showed that he had had it for nearly twenty years. The fact that the insured wore glasses, was nearsighted and so advised the Company's examiner, was no proof that the examiner had knowledge or notice of the existence of retinitis pigmentosa. This is clearly indicated by the medical testimony in the record. Compare Schriedel v. John Hancock Life Ins. Co., Mo.App., 133 S.W.2d 1103, 1105. The court did not err to the prejudice of the insured in its rulings on evidence or in its instructions to the jury.

Whether, under the evidence and the applicable law, the Company was entitled to a directed verdict, as it contends, we need not decide.

Since the verdict of the jury was justified by the evidence and the law, the judgment is affirmed.