Hester M. MILLER, Administratrix of the Estate of C. E. Miller, Deceased, Plaintiff-Respondent,

v.

PLAINS INSURANCE COMPANY, a corporation, Defendant-Appellant.

No. 8582.

Springfield Court of Appeals.

Missouri.

Nov. 21, 1966.

Motion for Rehearing or Transfer to Supreme Court Denied Dec. 16, 1966.

Application to Transfer Denied Jan. 9, 1967.

Riddle, O'Herin & Newberry, Malden, for defendant-appellant.

Dalton, Treasure & Bullard, Kennett, for plaintiff-respondent.

TITUS, Judge.

Daizy Corrine Miller, wife of C. E. Miller, was killed in an accident on January 14, 1965, while she was riding in a Chevrolet owned and driven by Hazel Gales. The Chevrolet figured in a collision with an uninsured 1957 Pontiac owned and operated by Leon Hopper. Mrs. Gales, who also perished in the crash, was the named insured in a Special Package Automobile Policy defendant Plains Insurance Company had issued effective January 1, 1965, to July 1, 1965, and which was in force on the date of the casualty. The policy provided, among other things, $500 medical expense coverage (which included expenses for funeral service) and Protection Against Uninsured Motorists coverage with a limit of $10,000. After Mr. Miller's demand for payment under these two coverages was denied, he instituted the present action on March 30, 1965. The case was tried to the Circuit Court of Pemiscot County, Missouri, with jury waived, and Mr. Miller was awarded judgment of $10,000 on his claim under the uninsured motorists provision and $500 on count two of his petition relative to the medical expense coverage. After the appeal of the insurance company to this Court was perfected Mr. Miller died, and a stipulation in the nature of a motion to substitute Hester M. Miller, administratrix of the estate of C. E. Miller, deceased, as plaintiff-respondent was filed. We refer in this opinion to the parties as they were known in the trial court.

Affirmatively defendant asserted in its answer the policy "was void ab initio" because Hazel Gales made untrue representations in her application which "was a part of the policy of insurance," that the "representations contained in said application were material to the risk * * * and that this Defendant would not have undertaken said risk had it known that the said Hazel Gales had been involved in an accident and had been arrested for moving traffic violations, namely, hazardous driving." No reply was filed to the answer.

In its "Declaration of Law" the trial court found "there was not sufficient material misrepresentation to Defendant Company to void its policy."

The policy recites that "in reliance upon the statements in the declarations made a part hereof," the insurer agreed to insure Mrs. Gales, and "by acceptance of this policy, the insured * * * agrees that the statements in the declarations and in any subsequent application accepted by the company which are offered as an inducement to the company to issue or continue this policy, are his agreements and representations, that this policy is issued and continued in reliance upon the truth of such representations and that this policy embodies all agreements existing between himself and the company or any of its agents relating to this insurance." The application, admittedly signed by Hazel Gales on December 30, 1964, contained negative answers to inquiries if she had been involved in an accident in the past five years or had any moving traffic violations or any arrest of any kind during the past three years. Item 10 of the declarations contained in the policy asked if Mrs. Gales had "been involved in an automobile accident while operating any private passenger type automobile, resulting in damage to any property including [her] own, or in bodily injury or death during the preceding 36 months? If 'Yes' complete the following." The question was answered "No."

■ Except for the exhibits, the evidence in this case consisted of offers and stipulations ore tenus. The parties and the trial court proceeded on the theory the application for insurance was a part of the policy (as pleaded in the answer), which is a hypothesis not inconsistent with the contract provisions above noted. It was not until

respondent's brief was filed that any reference was made to physical separation of the policy and the application. As subsequently noted and because of insured's policy agreements, this is of no consequence in this cause. The exhibit shows, and plaintiff's brief admitted, defendant actually received the application. No suggestion has ever been made as to the applicability of any statute to the matters in issue. Appellate courts are not prone to paddle beyond the perimeter of the puddle plied by the parties in the trial court and our review will be made on the same theories and assumptions heard by the trial judge.[1] What we say should not be construed as determining the effect of any statutory law which has been wholly disregarded by the litigants. Trantham v. Home Insurance Co. of New York, Mo.App., 137 S.W.2d 690, 693.

■ The parties stipulated that if defendant's agent was to testify he would state the questions on the application were not read to Hazel Gales and she did not read the form before signing it. There was no claim or suggestion of any fraud, mistake, or concealment by the agent. The exhibit indicates Mrs. Gales was thirty-eight years of age when she signed the application and was then gainfully employed as a supervisor. Her signature indicates some skill in penmanship, and no doubt has been cast upon her ability to read and comprehend the printed questions and the sometimes printed and sometimes written, but always legible, answers appearing on the application. In such circumstances Mrs. Gales was legally bound to know the contents of the application she signed, whether she read it or not (Minich v. M. F. A. Mutual Insurance Co., Mo.App., 325 S.W.2d 56, 58[3] and [5]; Gooch v. Motors Insurance Co., Mo.App., 312 S.W.2d 605, 609

1. Haire v. Stagner, Mo.App., 356 S.W.2d 305, 308(3); Greathouse v. Wolff, Mo. App., 360 S.W.2d 297, 301(2); Dugan v. Trout, Mo.App., 271 S.W.2d 593, 598 (10); State ex inf. Mooney ex rel. Stewart v. Consolidated School Dist. No. 3, Mo.App., 281 S.W.2d 511, 515(12); Griffin v. Anderson, Mo.App., 369 S.W.2d 889, 892(7); Olsten v. Susman, Mo., 362 S.W.2d 612, 614(3); 5 Am.Jur.2d Appeal and Error § 546, pp. 31–32; 4 C.J.S. Appeal and Error § 241 d (1) (2), and (3), pp. 730–738.

[2]), and this is not affected by the fact she relied upon or trusted the agent to prepare the application for the policy. Bearden v. Countryside Casualty Co., Mo.App., 352 S.W.2d 701, 706(4).

Contrary to both the application and the policy declarations, Mrs. Gales had an accident in Clay County, Arkansas, on December 13, 1962, when the automobile she was driving came into collision with an uninsured truck. She then was insured by Zurich Insurance Company and on January 24, 1964, sued Zurich in an Arkansas state court under the Family Protection Against Uninsured Motorists provision of the policy claiming $10,000 damages. The case was removed to the federal court and subsequently returned to the state tribunal where, on November 21, 1964, a judgment was entered dismissing the case without prejudice to Mrs. Gales. In some fashion unknown to us the matter was reinstated in the Arkansas court, for on February 18, 1965 (a month and four days after the death of Mrs. Gales), an order was made dismissing the case with prejudice. The order recites Mrs. Gales and Zurich had compromised and settled their differences. Zurich had paid Mrs. Gales $5,200 in settlement of her claim.

The evidence additionally reveals that following the Arkansas accident a summons was issued charging Mrs. Gales with hazardous driving. However, because Mrs. Gales was confined to a Piggott, Arkansas, hospital in a serious condition subsequent to the accident, the Arkansas state trooper failed to serve the summons before Mrs. Gales left the hospital and returned to Missouri. The justice of the peace at Piggott would have said his records revealed a plea of guilty had been entered to the charge of hazardous driving filed against Mrs. Gales, and although the justice had no personal recollection of the matter, a guilty plea would be recorded only if Mrs. Gales had personally pleaded guilty, if her attorney had appeared and entered such a plea, or if her bond had been forfeited.

The proposed testimony of the various witnesses was all subject to various objections. Suppositions of defendant's agent as to what "he could have asked" Mrs. Gales when the application was prepared and signed and what he would have done had he known the truth were also offered by the plaintiff. Defendant likewise objected to tendered conclusions made by an unidentified agent for Zurich as to who he surmised was at fault in the Arkansas accident.

Without objection the parties stipulated defendant's underwriting manager would testify that at the time Mrs. Gales' application for insurance was received, it was the custom and business practice of the company to decline any risk where a person applying for coverage had been involved in an accident within the previous five years or had within three years prior to the application been arrested for any moving violation.

█ Plaintiff's arguments pointing to the fact defendant's agent had authority to and did, in fact, bind the coverage does not appear to reach any issue in this case. No claim is made to the contrary and the fact defendant seeks to avoid the contract on the grounds stated presupposes the agent had bound the coverage and effected a contract. The issue concerned, according to defendant's pleadings and the theory on which the case was tried, was whether or not defendant can now avoid the contract because of the alleged material misrepresentations made by Hazel Gales. We likewise summarily note and rule, contrary to plaintiff's contention, that defendant was not limited to ordinary cancellation of the policy to avoid liability where the claim is made it was void or voidable because of a material misrepresentation.

█ A material misrepresentation renders a transaction voidable as to the person making it and all who stand in no better position. Minich v. M. F. A. Mutual Insurance Co., Mo.App., 325 S.W.2d 56, 57(1); Restatement of Contracts § 476(1), p. 908;

State Farm Mutual Auto. Insurance Co. v. West (DCMd.), 149 F.Supp. 289, 305(11). The trial court's declaration "there was not sufficient material misrepresentation to Defendant Company to avoid its policy" would constitute a tacit finding a material misrepresentation had been made but for the adjectives employed which terminate the statement at the opposite conclusion. Concerning words, *Through the Looking Glass* informs us, "They've a temper some of them—particularly verbs; they're the proudest—adjectives you can do anything with, but not verbs." Since the net result of the trial court's declaration of law amounts to a situation where no material misrepresentation had been made, we willingly follow the advice that adjectives are something "you can do anything with," which includes ignoring them completely. Ergo, based on this adventure in grammar gymnastics and by obliterating the word "sufficient," we proceed on the assumption the trial court found no material misrepresentation was made.

■ What is a material misrepresentation? A misrepresentation that would likely affect the conduct of a reasonable man in respect to his transaction with another is material. Materiality, however, is not determined by the actual influence the representation exerts, but rather by the possibility of its so doing. A representation made to an insurer that is material to its determination as to what premium to fix or to whether it will accept the risk, relates to a fact actually material to the risk which the insurer is asked to assume. The word "risk" does not relate to an actual increase in danger but to a danger determined by the insurer's classification of the various circumstances affecting rates and insurability. That the fact misrepresented has no actual subsequent relation to the manner in which the event insured against occurred, does not make it any the less material to the risk. Thus, whether a misrepresentation is material in an application for an automobile insurance policy, is determined by whether the fact, if stated truthfully, might reasonably have influenced the insurance company to accept or reject the risk or to have charged a different premium, and not whether the insurer was actually influenced.[2]

■ A warranty is a "parcel of the contract," i. e., a part of the contract by either being physically present therein or being incorporated therein by reference,[3] and, absent statutory changes (or where, as here, otherwise pleaded) must be absolutely true whether material or not, and even though innocently made.[4] Ignoring the in-

2. Bearden v. Countryside Casualty Co., supra, Mo.App., 352 S.W.2d 701, 707(5, 6); Restatement of Contracts § 470(2), p. 891; 7 Wigmore on Evidence, 3rd Ed., § 1946, pp. 60–61; 7 Couch on Insurance 2d § 35:79, pp. 92–95, § 35:82, p. 99, and § 35:87, pp. 102–103.

3. Grand Lodge, United Brothers of Friendship, etc. v. Mass. Bonding & Ins. Co., 324 Mo. 938, 25 S.W.2d 783, 785 and 787 (7); Ettman v. Federal Life Ins. Co., 8 Cir., 137 F.2d 121, 125(2), 126(4); Pacific Mutual Life Ins. Co. v. Glaser, 245 Mo. 377, 150 S.W. 549, 551(2), 45 L.R.A., N.S., 222; 29 Am.Jur. Insurance § 710, pp. 970–971; 7 Couch on Insurance 2d §§ 35:67–35:75, pp. 76–88; 12 Appleman Insurance Law & Practice, § 7341, pp. 440–443.

4. Commercial Bank v. American Bonding Co., 194 Mo.App. 224, 187 S.W. 99, 101–102(9); Prentiss v. Illinois Life Ins. Co., Mo., 225 S.W. 695, 702(8); Park v. Fidelity & Casualty Co., Mo.App., 279 S.W. 246, 248(5); 29 Am.Jur. Insurance §§ 711 and 712, pp. 971–972; Aloe v. Mutual Reserve Fund Life Ass'n, 147 Mo. 561, 49 S.W. 553, 556–557; McDermott v. Modern Woodmen of America, 97 Mo. App. 636, 71 S.W. 833, 836; Pacific Mutual Life Ins. Co. v. Glaser, supra, 245 Mo. 377, 150 S.W. 549, 551(2), 552(3), 45 L.R.A.,N.S., 222; Ettman v. Federal Life Ins. Co., supra, 8 Cir., 137 F.2d 121, 125(2), 126(3), and 127(9); Dixon v. Business Men's Assurance Co. of America, (Banc), 365 Mo. 580, 285 S.W.2d 619, 625(5, 6); Kirk v. Metropolitan Life Ins. Co., 336 Mo. 765, 81 S.W.2d 333, 342–343(7); 17A C.J.S. Contracts § 494 (1), p. 707.

surance application for the moment, the declarations were physically a "parcel of the contract," and contained in the declarations was the false statement that Mrs. Gales had not been in an automobile accident during the preceding thirty-six months. But for the burden defendant assumed by its pleading in declaring Mrs. Gales' representations material, the mere falsity of this warranty might have served to avoid the contract. Mrs. Gales' acceptance of the policy constituted her agreement the statements which she made in both the declarations and the application constituted her "agreements and representations," and because the contract recites the policy was "issued and continued in reliance upon the truth of such representations," it was permissible for defendant to show it relied upon the truth of the statements contained in the application, whether they constitute warranties or representations. See State Farm Mutual Auto. Ins. Co. v. Butler, 203 Va. 575, 125 S.E.2d 823, 826(2); State Farm Mutual Auto. Ins. Co. v. West, supra (DC Md.), 149 F.Supp. 289, 304–305(10). The application was an offer to become a part of the contract when accepted and any material misrepresentation therein contained would render the policy voidable whether the misrepresentation was made intentionally or through mistake and in good faith.[5]

■ Mrs. Gales having been physically involved in the Arkansas accident obviously had knowledge of that event and, because of the apparent seriousness of that casualty and the fact the law suit she filed (and which was still pending at the time of her death) would serve as a constant reminder, she is presumed to have had knowledge thereof when she signed the application and accepted the policy in question. 1 Merrill on Notice, § 37, p. 26, and § 43, pp. 34–36. The representations in both the application and the declarations to the effect Mrs. Gales

had not been involved in an accident either three or five years previously were false.

Plaintiff offered to show by a man who was "dating" Mrs. Gales that he paid her fine on the traffic violation arising from the Arkansas accident and further offered this gentleman's conclusion Mrs. Gales "never knew" a summons had been issued against her charging hazardous driving. Although it seems improbable a swain would keep secret from his lady-fair the tidings of such a deed, and while it is apparent one person cannot know what was never within another's knowledge, there is a dearth of authority holding receipt of such testimony to be prejudicial error. Sneed v. Marysville Gas & Electric Co., 149 Cal., 704, 87 P. 376, 378(1). Even though we do not revel in "the sport to have the engineer Hoist with his own petar" (Hamlet), if we accept plaintiff's offer the effect is the same as if it were rejected. A material misrepresentation, as noted by the previously cited authorities, will serve to avoid a contract even though the misrepresentation be made through mistake. Funk & Wagnalls New Standard Dictionary of the English Language 1952, defines mistake as "an act or omission arising from ignorance or misconception." "The essential prerequisite of mistake · is ignorance * * *" 58 C.J.S. Mistake, p. 830. Also, "'a mistake of fact takes place, when some material fact, which really exists, is unknown * * *.'" Caudill v. Chatham Mfg. Co., 258 N.C. 99, 128 S.E.2d 128, 130(1, 2). Consequently, it would appear Mrs. Gales was bound by the negative answer appearing on her application to the inquiry if she "had any * * * moving traffic violations" during the past three years, whether she was ignorant of the fact or not.

■ Safeco Insurance Company of America v. Gonacha, (1960), 142 Colo. 170, 350 P.2d 189, concerned "no" answers in-

---

5. Minich v. M.F.A. Mutual Insurance Co., supra, Mo.App., 325 S.W.2d 56, 57(1–3); Bearden v. Countryside Casualty Co., Mo. App., 352 S.W.2d 701, 705(2); Haman v. Pyramid Life Ins. Co., Mo.App., 347 S.W. 2d 449, 454(1, 2 and 3); Pittman v. West American Ins. Co., 8 Cir., 299 F.2d 405, 410; 17 C.J.S. Contracts § 135, pp. 866–871.

sured had made on his application to each of the questions: Has any insurer cancelled or refused insurance for insured? Has any user been involved in an accident (as a driver) during the past three years? The facts were the insured had been refused insurance and was involved in two accidents within three years prior to his application. The Supreme Court of Colorado held, 350 P.2d 1. c. 191(2): "The representations here made being false and material to the risk, and the insurance company having relied thereon in entering into the contract, the necessary grounds to void the policy were met."

The application offered in evidence in State Farm Mutual Automobile Ins. Co. v. West, supra (DCMd.), 149 F.Supp. 289 (a case cited in several Missouri cases) gave the false answer "none" to the question as to accidents, and a false checkmark under the "no" box in answer to the question as to suspension or revocation of operator's license or registration. At page 305 of the opinion the court stated: "The court, already having found as a fact that the negative answers * * * in the applications were material, false, and relied upon by the insurer in issuing the policies, so rules as a matter of law." Also see State Farm Mutual Automobile Ins. Co. v. Butler, (1962), 203 Va. 575, 125 S.E.2d 823, where the assureds represented they had not been involved in previous accidents nor suffered revocation of driver's license, whereas in truth both had figured in prior collisions and the wife had been convicted of "speeding" and suffered revocation of her driver's license; and Government Employees Insurance Co. v. Powell, 2 Cir., 160 F.2d 89, where insured, via letter written by his agent, represented his brother (previously arrested for "driving under the influence") would drive the car "once a week to go shopping and once or twice a week to commute to work." This was ruled a material misrepresentation because assured was overseas and had left the insured vehicle with his brother to drive at will.

A declaratory judgment action to secure nullification of an automobile liability insurance policy was the subject of Pittman v. West American Insurance Co., 8 Cir. (1962), 299 F.2d 405. The insured answered "no" to the question, "Has any user been involved in an accident (as a driver) in the past three years?" The truth was insured had been involved in an accident within three years of the date of his application and was fined $16 for careless driving on a charge growing out of the collision. Judge Duncan presided at the trial of the case before a jury and instructed: " ' * * [I]t was the opinion of the Court, as a matter of law, that he had had an accident and the Court will say to you that it was his duty to reveal that fact to the insurance agent at the time he signed this application * * * and if he had concealed the evidence, under this evidence if he concealed that fact and did not reveal it * * * then it was a material misrepresentation or failure to advise the agent concerning a material fact and would void the policy * * *.' " On appeal, the Circuit Court of Appeals, l. c. 411, said: "We think * * the conclusion of the trial court that the misrepresentation of the insured in his application avoided the policy as a matter of Missouri law, was a permissible one."

It is a well-known fact insurance companies rely on expense, loss, and other statistical data to measure differences among risks and thus ascertain rates to be charged for individual risks in accordance with standards for measuring variations in hazards. This is recognized and, to some extent, controlled by our statutes. Questions as to traffic violations of prospective insureds and as to previous accidents in which they have been involved are legitimate fields of research for insurance companies, for these are not only rate-determining facts but may also determine if the risk will even be insured. In consideration of the authorities previously cited, and with particular reference to the Pittman case, supra, we are of the opinion the mis-

representations involved in this case might reasonably be expected to have influenced the insurance company to have accepted or rejected Mrs. Gales as an insured or to have charged her a different premium for issuing her a policy. As the only evidence in this case is that if defendant had known the truth it would have declined the risk, we are drawn to the conclusion the misrepresentations were material and should permit defendant to avoid its liability under the policy.

The foregoing makes it unnecessary for us to consider the other issues asserted by the parties. The before-noted motion to substitute Hester M. Miller, Administratrix of the estate of C. E. Miller, deceased, as the plaintiff-respondent herein is sustained and the substitution is ordered allowed.

The judgment against defendant is reversed.

STONE, P. J., and HOGAN, J., concur.