Everette SLAGLE, Plaintiff-Appellant,

v.

Cecil MINICH, Defendant,

MFA Mutual Insurance Company,
Garnishee-Respondent.

Mrs. Everette SLAGLE, Plaintiff-Appellant,

v.

Cecil MINICH, Defendant,

MFA Mutual Insurance Company,
Garnishee-Respondent.

No. KCD 26637.

Missouri Court of Appeals,
Kansas City District.

May 5, 1975.

W. F. Daniels, Fayette, for plaintiff-appellant.

Collins & Grimm, Hadley E. Grimm, Macon, for garnishee-respondent.

Before SOMERVILLE, P. J., PRITCHARD, C. J., and TURNAGE, J.

PER CURIAM.

These consolidated garnishment proceedings have a common hoary history which fails to lend itself to any semblance of brevity. With this forewarning, the following facts are set forth.

On March 2, 1957, Everette Slagle and his wife, hereinafter referred to as "the Slagles", sustained injuries in an accident involving a motor vehicle owned and operated by Cecil H. Minich. Thereafter, the Slagles instituted separate actions for damages in the Circuit Court of Howard County against Minich resulting in judgments in their favor on March 6, 1959.

On March 18, 1957, Minich brought a declaratory judgment action in the Circuit Court of Chariton County, Missouri, naming MFA Mutual Insurance Company (hereinafter referred to as "MFA") and the Slagles as defendants. Minich's declaratory judgment action sought to have a thirty-day "binder" issued to hi mby MFA declared to be a valid contract of insurance. The declaratory judgment action was prompted by the fact that on March 8, 1957, MFA advised Minich, by written notice, that it would not defend on his behalf any actions arising out of the accident of March 2, 1957. The notice stated that the "binder" of insurance purportedly effective for a thirty-day period starting at two o'clock P.M. on February 28, 1957, was "void and of no effect".

As evidenced by its answer to Minich's declaratory judgment action, MFA asserted that the "binder" was void ab initio because of certain false representations made by Minich in his signed application for insurance. The subsequently proven false representations pertinent to the present consolidated appeals being that (1) he had never previously had a policy of automobile liability insurance cancelled when, in fact, he had, and (2) he had no physical defects when, in fact, he was blind in his left eye. MFA further pleaded that the false representations "were material to the risk and issuance of the . . . binder for which [Minich] applied" and that the binder "was void and of no effect because procured and obtained by intentional misrepresentations of fact which were material to the issuance of said binder and the undertaking and assuming of the risk applied for."

Prior to final judgment in the declaratory judgment action the Slagles, on motion of MFA, were dismissed as parties. The declaratory judgment action then proceeded to a final judgment in the trial court in favor of Minich. The trial court found that the representations, although false, resulted from negative answers placed by MFA's agent in the application signed by Minich, absent any oral statements by Minich, one way or the other, regarding the subject matter of the representations, and that Minich was unaware of the false representations when he signed the application. On the basis of these findings, the trial court entered judgment in favor of Minich. Minich made no claim that the application signed by him was tainted with fraud, concealment or mistake because of the agent's conduct. MFA timely appealed the judgment rendered against it in the declaratory judgment action.

On April 6, 1959, the Kansas City Court of Appeals, the de jure forebearer of this court, in Minich v. M.F.A. Mutual Insurance Company, 325 S.W.2d 56, reversed the judgment rendered by the Circuit

Court of Chariton County in the declaratory judgment action and remanded the cause "with directions to enter judgment declaring the policy [binder] here involved to be void ab initio." The principal reasons assigned by the court in *Minich* for its decision were (1. c. 58): (1) "A representation that he [Minich] had not previously had a policy cancelled was material to the risk and grounds for avoidance of the policy if untrue."; (2) "The fact of his blindness was material to the risk. The same law applies to this matter as that discussed with relation to the prior cancellation of a policy."; and (3) Having signed the application, which plainly recited that plaintiff had never suffered a cancellation of insurance, he is bound by the terms of the contract eventually consummated, of which the application was a part; and, whether or not he read the instrument, or had it read to him, absent any claim of fraud, concealment, or mistake (and none is made here) he is estopped from denying full knowledge of the terms of the application." The Supreme Court of Missouri denied Minich's application for transfer.

Returning now to the judgments for money damages obtained by the Slagles against Minich in the Circuit Court of Howard County, the record discloses that on August 29, 1961, general executions were issued to enforce satisfaction of the respective judgments, and, in aid thereof, MFA was summoned as garnishee. The summonses of garnishment served on MFA notified it to appear before the Circuit Court of Howard County on the 18th day of September, 1961, to "answer such allegations and interrogatories as may be exhibited" by the Slagles. Interrogatories were never propounded by either of the Slagles to MFA in the garnishment proceedings. A vacuous record exists with respect to interrogatories, answers thereto, denials and replies, the conventional method of joining issues in garnishment proceedings. The transcript before this court contains no explanation, or so much as even a hint, as to why the conventional and rule-afforded procedure for joining issues in garnishment proceedings was not utilized.

After MFA was summoned as garnishee the garnishment proceedings lay dormant for approximately six years. Lo and behold, however, on March 1, 1967, the Slagles, by counsel, and MFA, by counsel, appeared in the Circuit Court of Howard County and "offers of evidence" were made to the court in each garnishment proceeding "in lieu" of interrogatories, answers to interrogatories, denials and replies. Concomitantly, the parties stipulated "that the court may make its ruling in the proceeding in each of these cases" on the "offers of evidence."

One of the "offers of evidence", apparently, was a "statement of facts" (never presented to this court via the transcript or as a filed exhibit). The remaining "offers of evidence" consisted of copies of the following introduced as exhibits: (1) the application and "binder" heretofore referred to; (2) all record entries in the declaratory judgment action brought by Minich in the Circuit Court of Howard County; (3) the opinion of the Kansas City Court of Appeals in Minich v. M.F.A. Mutual Insurance Company, supra, along with Minich's motion in the Kansas City Court of Appeals for rehearing, or, in the alternative for transfer to the Supreme Court, with M.F.A.'s suggestions in opposition thereto; (4) Minich's motion for transfer to the Supreme Court along with M.F.A.'s suggestions in opposition thereto; and (5) a petition filed by Minich in the Circuit Court of Boone County, Missouri, against MFA seeking money damages for alleged fraudulent and malicious representations made by MFA to the Department of Revenue concerning Minich's lack of insurance coverage resulting in the suspension of Minich's operator's license, along with a motion to dismiss filed by MFA with respect thereto, and a stipulation that said motion was sustained.

The transcript on appeal fails to disclose any written suggestions or oral arguments

filed or made by counsel on behalf of either of the parties on November 1, 1967, or at any other time, suggesting or indicating specific issues purportedly joined in the garnishment proceedings. The trial court, in an effort to determine the issues purportedly joined in the garnishment proceedings, was obviously placed in the untenable position of gropingly sifting through the "statement of facts" alluded to and the various lengthy exhibits introduced. So far as aiding the trial court in determining what issue or issues were joined, the parties presented the trial court, at best, with a tangled legal morass.

Following March 1, 1967, the garnishment proceedings again lay dormant. This time for a period of approximately six and one-third years. They next emerged on February 20, 1973, when, according to the transcript, the following entry appears: "Thereafter, on the 20th day of February, 1973, the Court entered an identical Order in each case, as follows: 'Garnishment action dismissed and writ of garnishment herein issued is ordered quashed.'" The Slagles separately appealed and this court, on its own motion, ordered both cases consolidated.

The consolidated cases were docketed for oral argument before Division One of this court during the May 1974 Term. During the course of oral argument, Division One of this court ordered that the transcript on appeal be supplemented by copies of all record entries in each separate damage action brought by the Slagles in the Circuit Court of Howard County, and, as well, with copies of certain additional record entries in the Circuit Court of Chariton County in the declaratory judgment action brought by Minich against MFA. The consolidated cases were then re-docketed by oral argument before Division Two of this court during the January 1975 Term. The transcript on appeal, as supplemented, still failed to contain the elusive "statement of facts" heretofore alluded to. Consequently, this court has labored under an even greater burden than did the trial court in attempting to determine what specific issue or issues were purportedly joined at the trial level in the garnishment proceeding.

The transcript on appeal (apart from the exhibits filed) and the statement of facts set forth by the Slagles in their brief are both skeletal, at best. This court has endeavored to "flesh out" the skeletal transcript and statement of facts by the tedious process of attempting to analyze and place the exhibits proffered as "offers of evidence" in proper context. This court has been required to expend an inordinate amount of time in doing so. A seriously considered alternative was outright dismissal of the Slagles' appeal.

So far as this court has been able to ascertain (without indulging in unbridled speculation, both in a negative and affirmative sense), only one issue was joined and presented below with evidentiary support for the trial court to rule upon. Were the admittedly false misrepresentations contained in Minich's signed application for insurance—that he never had previously had a policy of automobile liability insurance cancelled when, in fact, he had, and that he had no physical defects when, in fact, he was blind in the left eye—material to the risk, thereby rendering the "binder" void ab initio?

The Slagles' brief, at least inferentially, casts some light on the dilemma encountered by this court in trying to discern what issue or issues were joined at the trial level. The initial argument portion of the Slagles' brief quotes as follows from Miller v. Plains Insurance Company, 409 S.W.2d 770 (Mo.App.1966): "Appellate courts are not prone to paddle beyond the perimeter of the puddle plied by the parties in the trial court and our review will be made on the same theories and assumptions heard by the trial judge." Having set the stage, the aforementioned quote was followed by a request by the Slagles for this court, literally, "to paddle beyond the puddle". Conjunctively, the Slagles raise only

two points on appeal. Although highly questionable as being in compliance with Rule 84.04(d), V.A.M.R.,[1] the two points raised by the Slagles on appeal, in the order hereinafter discussed, appear to be as follows: (1) Minich v. M.F.A. Mutual Insurance Company, supra, to the extent of holding that representations of the nature in question were "material to the risk and grounds for avoidance of the policy if untrue", should be re-examined; and (2) Sections 379.195 and 379.200, RSMo 1969, V.A.M.S., fixed MFA's liability so far as the Slagles were concerned at the time the accident occurred even though the "binder" might subsequently be determined to be void ab initio. Re-examination of *Minich* is urged on the ground that the Kansas City Court of Appeals failed to consider the existence of a well recognized legal distinction between mere representations and representations equivalent to warranties, and, as well, as to the former, the existence of a settled body of law that in order for a misrepresentation to void a contract of insurance ab initio, the burden rests upon an insurer to not only prove the falsity of a representation, but, further, to prove that it was fraudulently made and, in fact, material to the risk.

The Slagles' literal request for this court to "paddle beyond the puddle" strongly, if not conclusively, suggests that grounds for the two points they now assert on appeal were never joined as issues at the trial level and never presented to the trial court for determination.

This court lays no claim to clairvoyant powers. Having conscientiously labored and heretofore concluded that only one issue was joined at the trial level, this court likewise concludes that the trial court, in obvious deference to Minich v. M.F.A.

Mutual Insurance Company, supra, and with equally obvious adherence to the doctrine or judicial policy of stare decisis, resolved the singular issue in favor of MFA.

■ The Slagles nevertheless ask this court "to paddle beyond the puddle" and revisit Minich v. M.F.A. Mutual Insurance Company, supra, for the purpose of declaring certain salient principles of law therein ill-advised and improvidently enunciated. Any present inclinations to revisit Minich v. M.F.A. Mutual Insurance Company, supra, more particularly insofar as it may hold that false representations of the nature of those in question are, as a matter of law, material to the risk in every case, is effectively stifled here in view of the inadequate, confusing and disoriented manner in which these consolidated cases were presented at the trial level, and, as well, on appeal. This court, by its disavowal of a willingness to engage in unbridled speculation as previously noted, likewise concludes that any issues inherent in revisitation of Minich v. M.F.A. Mutual Insurance Company, supra, were never joined in these garnishment proceedings. The transcript on appeal, coupled with the virtually barren statement of facts contained in the Slagles' brief and the argument portion thereof, leaves no room to logically conclude otherwise. Therefore, this court presently chooses in these consolidated cases, free of reluctance, hesitancy or doubt as to the propriety or fairness of doing so, to adhere to the judicial policy of stare decisis and to affirm the judgments rendered by the trial court under the authority of Minich v. M. F.A. Mutual Insurance Company, supra.

■ The Slagles have additionally requested this court to "paddle beyond the puddle" and review the judgments on the

1. After considerable hesitancy, MFA's motion to dismiss the Slagles' appeal for failure to comply with Rule 84.04(d) is overruled.

As noted in the body of this opinion, it is highly questionable whether the statement of facts contained in the Slagles' brief complied with Rule 84.04(c).

ground that Sections 379.195 and 379.200, supra, fixed MFA's liability so far as they were concerned at the time the accident occurred even though the "binder" might subsequently be determined to be void ab initio. Having already concluded that the judgments entered by the trial court should be affirmed under the authority of Minich v. M.F.A. Mutual Insurance Company, supra, the "binder" therefore was void ad initio. Perforce, the Slagles' final point under discussion, although never advanced by them at the trial level, is totally devoid of merit on its face. Section 379.195, supra, provides, inter alia, that ". . . whenever a loss occurs on account of a casualty *covered by such contract of insurance,* the liability of the insurance company, *if liability there be,* shall become absolute . . ." (Emphasis added.) Since the "binder" was void ab initio by virtue of Minich's false representations that he had not had a previous automobile liability policy cancelled, when, in fact, he had, and that he had no physical defects, when, in fact, he was blind in his left eye (Minich v. M. F. A. Mutual Insurance Company, supra), there was no liability on the part of MFA to Minich at the time the accident occurred. Sections 379.195 and 379.200, supra, did not give the Slagles any greater rights then those possessed by Minich. Since Minich had no rights under the "binder", the Slages had none. Greer v. Zurich Insurance Company, 441 S.W.2d 15, 30 (Mo.1969).

This elongated opinion, if it serves any purpose whatsoever beyond resolving the differences between the immediate parties, should demonstrate to the bar the intrinsic danger of circumventing the conventional and rule-provided procedure for joining issues in garnishment proceedings.

In each case, the judgment below is affirmed.

All concur.